IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------X
IN THE MATTER OF THE ARBITRATION
BETWEEN:                                                      :

TRICON ENERGY, LTD.                                          :

       Petitioner,                                   :       CASE NO. 4:10-mc-00509

    and-                                                 :

VINMAR INTERNATIONAL, LTD.,                                  :

      Respondent.                                    :
---------------------------------------------------------X

**TRICON ENERGY, LTD'S REPLY IN SUPPORT OF
PETITION TO CONFIRM ARBITRATION AWARD**

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

I.   SUMMARY OF THE ARGUMENT AND PROCEDURAL HISTORY........................ 1

II.  FACTUAL BACKGROUND ..................................................................... 1

III. ARGUMENT AND AUTHORITIES............................................................ 2

    A.   Statement of Issue and Standard of Review ......................................... 2

    B.   Vinmar Has Not Met Its Burden of Proof.............................................. 2

    C.   Vinmar's Arguments Have No Merit ..................................................... 5

        1.   The Panel Had the Authority to Determine its Own Jurisdiction ............... 5

        2.   The Parties Had An Enforceable Contract That Contained An
            Arbitration Provision and Satisfied the Statute of Frauds ......................... 7

            a.   The Broker's Confirmation Was Modified and Added to
               by the Tricon Letter ..................................................................... 7

            b.   Alternatively, the Tricon Letter is an Enforceable Contract
               Pursuant to Article 2.207 .............................................................. 9

               i.   If the Amended Broker's Confirmation is Not Binding,
                    the Tricon Letter was a Written Confirmation of the
                    Parties' Informal Agreement ........................................... 9

               ii.  Vinmar Accepted the "Offer" in the Tricon Letter.........11

            c.   The Tricon Letter Was Signed by Vinmar and Satisfies the
                Statute of Frauds ........................................................................ 11

        3.   Vinmar's Other Complaints Are Frivolous ............................................. 13

            a.   Review of Arbitration Awards is Exceedingly Deferential .......... 13

            b.   Vinmar's Additional Complaints—Even if True—Do Not
               Present Grounds to Disregard the Panel's Award........................ 14

                i.   The Award Does Not Violate Public Policy..................... 14

                ii.  Vinmar's Complaint Regarding the Scope of the
                    Award is Not a Ground for Non-Recognition ................. 15

        4.   Tricon Has Satisfied the New York Convention ..................................... 17

        5.   The Panel Had Authority to Award Costs to Tricon ................................ 17

        6.   Vinmar is Not Entitled to its Attorneys' Fees.................................18

IV.  CONCLUSION AND PRAYER ................................................................ 18

{00116366.DOC; 5}

## TABLE OF AUTHORITIES

### Cases

*American Laser Vision v. Laser Vision Laser Vision Institute, L.L.C.*,
    487 F.3d 255 (5th Cir. 2007) ........................................................................ 2, 13, 15

*Amalgamated Meat Cutters and Butcher Workmen of North America,*
*Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.,*
    481 F.2d 817 (5th Cir. 1973) ................................................................................ 16

*Ceco Corp. v. Steves Sash & Door Co., Inc.,*
    714 S.W.2d 322 (Tex. App.—San Antonio 1986), *mod'd and rev'd in part on other grounds*
    *by*, 751 S.W.3d 473 (Tex. 1988) .......................................................................... 10

*Central Power & Light Co. v. Del Mar Conservation Dist.,*
    594 S.W.2d 782 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.) ..................................... 12

*China Nat'l Bldg. Material Inv. Co., Ltd. v. BNK Int'l LLC,*
    No. A-09-CA-488-SS, 2009 WL 4730578 (W.D. Tex. Dec. 4, 2009) ................................ 3, 17

*Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009) ................................ 13

*Cloud Corp. v. Hasbro, Inc.,*
    314 F.3d 289 (7th Cir. 2002) ................................................................................ 12

*Cox Eng'g, Inc. v. Funston Mach. & Supply Co.,*
    749 S.W.2d 508 (Tex. App.—Fort Worth 1988, no writ) ................................................ 12

*D & M Edwards, Inc. v. Bio-Cide Int'l, Inc.,*
    No. 3:08-CV-0670-L, 2009 WL 102732 (N.D. Tex. Jan. 4, 2009) ....................................... 12

*D.H. Blair & Co., Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) ................................................................................... 3

*Den Norske Stats Oljeselskap, A.S. v. Hydrocarbon Processing, Inc.,*
    992 F. Supp. 913 (S.D. Tex. 1998) ........................................................................... 9

*Executone Info. Sys., Inc. v. Davis,*
    26 F.3d 1314 (5th Cir. 1994) ........................................................................... 15, 16

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938, 115 S. Ct. 1920 (1995) ......................................................................... 7

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth,*
    22 S.W.3d 831 (Tex. 2000) ................................................................................... 8

*Graybar Elec. Co., Inc. v. LEM & Assocs., L.L.C.,*
    252 S.W.3d 536 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ........................................ 8

*Green v. Serv. Corp. Int'l,*
    No. H-06-833, 2008 WL 4056325 (S.D. Tex. Aug. 25, 2008) .......................................... 16

*Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp.,*
    512 F.3d 742 (5th Cir. 2008) ................................................................................ 4

{00116366.DOC; 5}

*Hall Street Assocs., LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) ............................................................................................... 3, 13

*HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*,
  243 F.App'x 838 (5th Cir. 2007) ................................................................................ 15

*Imperial Ethiopian Gov't v. Baruch-Foster Corp.*,
  535 F.2d 334 (5th Cir. 1976) ...................................................................................... 4

*In re Arbitration between Trans Chem. Ltd. and China Nat'l Mach.*
  *Import & Export Corp.*, 978 F. Supp. 266 (S.D. Tex. 1997), *adopted by*, 161 F.3d 314 (5th Cir. 1998) ...................................................................................................... 3, 17

*In re Laibe Corp.*,
  307 S.W.3d 314 (Tex. 2010) ..................................................................................... 8, 9

*In re Rio Grande Xarin II, Ltd.*,
  Nos. 13-10-00115-CV, 13-10-00116-CV, 2010 WL 2697145
  (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd) .......................................... 5, 6, 7

*Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Medical*
  *& Scientific Corp.*, 399 F. Supp. 2d 165 (E.D.N.Y. 2005) .................................... 4, 17

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  364 F.3d 274 (5th Cir. 2004) ................................................................................... 4, 14

*Kimco Birmingham LP v. Third Creek LLC*,
  No. 3:07-CV-1642-O, 2010 WL 147942 (N.D. Tex. Jan. 14, 2010) ...................... 15, 17

*Lamle v. Mattel, Inc.*,
  394 F.3d 1355 (Fed. Cir. 2005) .................................................................................. 12

*Legion Ins. Co. v. Ins. Gen. Agency, Inc.*,
  822 F.2d 541 (5th Cir. 1987) ....................................................................................... 4

*Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*,
  256 F. Supp. 2d 594 (S.D. Tex. 2002) ......................................................................... 3

*M & C Corp. v. Erwin Behr GmbH & Co., KG*,
  87 F.3d 844 (6th Cir. 1996) ........................................................................................ 14

*MGM Prods. Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772 (S.D.N.Y. 2003),
  *aff'd*, 91 F.App'x 716 (2d Cir.), *cert. denied*, 543 U.S. 956 (2004) ......................... 2

*Overseas Cosmos, Inc. v. NR Vessel Corp.*,
  No. 97 CIV. 5898(DC), 1997 WL 757041 (S.D.N.Y. Dec. 8, 1997) ........................ 17

*Perry Homes v. Cull*,
  258 S.W.3d 580 (Tex. 2008) ........................................................................................ 6

*Pillar to Post, Inc. v. Weible*,
  No. H-09-3227, 2010 WL 2636121 (S.D. Tex. June 29, 2010) ............................... 3, 4

*Roehrs v. FSI Holdings, Inc.*,
  246 S.W.3d 796 (Tex. App.—Dallas 2008, pet. denied) ........................................... 15

*Saipem Am. v. Wellington Underwriting Agencies Ltd.*,
335 F.App'x 377 (5th Cir. 2009) ............................................................ 2, 13

*Sungard Energy Sys. Inc. v. Gas Transmission Northwest Corp.*,
551 F. Supp. 2d 608 (S.D. Tex. 2008) ......................................................... 16

*Taggart v. Crews*,
521 S.W.2d 703 (Tex. App.—San Antonio 1975, writ ref'd n.r.e.) ...................................... 12

*Toomer v. Receivables Mgmt., Inc.*,
No. 1:08-cv-00467-LY, 2010 WL 5071778 (W.D. Tex. Dec. 9, 2010) ................................. 17

*Tri-State Petroleum Corp. v. Saber Energy, Inc.*,
845 F.2d 575 (5th Cir. 1988) ............................................................... 11

*United Forming, Inc. v. Faulkner USA, LP*,
350 F.App'x 948 (5th Cir. 2009) ............................................................ 15

*Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*,
835 S.W.2d 190 (Tex. App.–Austin 1992, no writ) .......................................... 11

*Will-Drill Res., Inc. v. Samson Res. Co.*,
352 F.3d 211 (5th Cir. 2003) ................................................................ 6

**Statutes**

15 U.S.C. § 7001(a)(1) ...................................................................... 13
9 U.S.C. § 9 ................................................................................ 3
9 U.S.C. § 10 ..................................................................... 14, 15, 18
9 U.S.C. § 16(a)(1)(A) ....................................................................... 6
9 U.S.C. § 207 .................................................................... 3, 14, 18
TEX. BUS. & COM. CODE § 1.201(b)(37) ................................................... 11, 12
TEX. BUS. & COM. CODE § 2.101, et seq. ..................................................... 5
TEX. BUS. & COM. CODE § 2.102 ............................................................. 5
TEX. BUS. & COM. CODE § 2.201 ........................................................ 11, 12
TEX. BUS. & COM. CODE § 2.207 ........................................................ 9, 10, 11
TEX. BUS. & COM. CODE § 2.209(a) ........................................................ 7, 8
TEX. CIV. PRAC. & REM. CODE § 171.098(a)(2) ............................................... 6

**Other Authorities**

AAA Commercial Arbitration Rule R-7(a) .................................................... 7
New York Convention, Art. IV ......................................................... 3, 17
New York Convention, Art. V .............................................................. 14

{00116366.DOC; 5}

TO THE HONORABLE UNITED STATES DISTRICT JUDGE SIM LAKE:

Plaintiff Tricon Energy, Ltd. ("Tricon") respectfully files this Reply in Support of Petition to Confirm Arbitration Award and would show the Court as follows:

## I.  SUMMARY OF THE ARGUMENT AND PROCEDURAL HISTORY

This case involves Tricon's Petition to Confirm a unanimous arbitration award (the "Award") issued on November 29, 2010 by a three-member panel consisting of Judges Mark Davidson, Levi Benton, and Sharolyn Wood (the "Panel").  Tricon filed its Petition to Confirm on December 13, 2010 pursuant to the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention").  Vinmar International, Ltd. ("Vinmar") responded on January 10, 2011, opposing confirmation and filing a counterclaim to vacate the Award ("Vinmar's Motion").  Vinmar's Response and Motion simply repeat the same legal and factual arguments that were unanimously rejected by the Panel.  The Panel found that Vinmar agreed to an arbitration provision proposed by Tricon, and Vinmar offers no evidence to the contrary.  This is a summary proceeding where Vinmar bears the burden of proving the existence of one of the grounds for non-recognition of the Award.  Because Vinmar has wholly failed to do this, Tricon's Petition to Confirm should be granted without further hearings or proceedings.

## II.  FACTUAL BACKGROUND

As addressed in Tricon's Petition to Confirm, on July 22, 2008, Tricon and Vinmar entered into an agreement, through a third-party broker, regarding Tricon's sale of 5,000 metric tons of mixed xylene ("MX") to Vinmar.  Later that day, the broker sent both parties a confirmatory memorandum to memorialize the agreement, which he later amended on July 23 to reflect a change in the payment terms requested by Vinmar and to correct a typo as to the agreed

{00116366.DOC; 5}

upon price.  (Ex. B-D).[1]  Shortly thereafter, Tricon sent Vinmar a letter setting forth its proposal for additional terms to be added to the contract ("Tricon Letter").  (Ex. E). One of these proposed additional terms was an arbitration provision.  *Id.* at ¶ 9.  On July 29, 2008, Vinmar responded to the Tricon Letter, assenting to most of the additional terms—including the arbitration provision—and proposing some minor changes.  (Ex. G). Tricon responded by accepting all of the minor changes proposed by Vinmar, except that it did not accept a 60 day demurrage time bar, which is not at issue here.  Tricon noted that "[y]our comments on the contract [are] well noted and accepted. . . ." (Ex. H). Thus, the parties' contract came to include all of the terms set forth in the Tricon Letter to which Vinmar assented, including the agreement to arbitrate.

### III.   ARGUMENT AND AUTHORITIES

#### A.   Statement of Issue and Standard of Review

This is a motion to confirm an arbitration award.  The Fifth Circuit has instructed that judicial review of arbitration awards is "exceedingly deferential."  *Saipem Am. v. Wellington Underwriting Agencies Ltd.*, 335 F.App'x 377, 379 (5th Cir. 2009) (quoting *Am. Laser Vision v. Laser Vision Institute, L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007)).  The award "must be upheld if it is rationally inferable from the letter or purpose of the underlying agreement." *Id.* at 379-80 (internal quotation marks omitted).

#### B.   Vinmar Has Not Met Its Burden of Proof

"The confirmation of an arbitration award is characterized as a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.  Accordingly the showing required to avoid summary confirmance is high." *MGM Prods. Group v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772, 774-75 (S.D.N.Y. 2003), *aff'd*, 91 F.App'x 716 (2d Cir.),

---

[1] Exhibits B-E and G-H previously were authenticated by Brad Lockwood in Tricon's Petition to Confirm. For ease of reference, Tricon is using the same exhibit labels as were used in its Petition.

*cert. denied*, 543 U.S. 956 (2004) (citations and quotation marks omitted).  As this Court has held, "Under [9 U.S.C. § 207], the court *must* confirm the award unless [the party opposing confirmation] alleges *and proves* one of the reasons for denying enforcement provided in [the New York Convention]." *In re Arbitration between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 309 (S.D. Tex. 1997) (Lake, J.), *adopted by*, 161 F.3d 314 (5th Cir. 1998) (emphasis added). "The [New York] Convention mandates a summary procedure modeled after federal motion practice to resolve motions to confirm." *Id.*  Because Vinmar has wholly failed to satisfy its burden of establishing that any ground for non-recognition of the Award exists, Tricon's Petition to Confirm should be granted without further hearings or proceedings.

Under the FAA, a petition to confirm must be granted unless the award has been vacated, modified, or corrected.  9 U.S.C. § 9; *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  Correspondingly, the party opposing confirmation bears the burden of establishing that a basis for vacatur exists. *See Pillar to Post, Inc. v. Weible*, No. H-09-3227, 2010 WL 2636121, at *1 (S.D. Tex. June 29, 2010) (citing *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006); *Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.,* 256 F. Supp. 2d 594, 604 (S.D. Tex. 2002)).  Similarly, under the New York Convention, "[t]he party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation." *China Nat'l Bldg. Material Inv. Co., Ltd. v. BNK Int'l LLC*, No. A-09-CA-488-SS, 2009 WL 4730578, at *2 (W.D. Tex. Dec. 4, 2009) (citing the New York Convention, Art. IV). Once the petitioner has presented these materials, "the party resisting confirmation bears the burden of showing one of the circumstances warranting denial of enforcement, as set forth in the New York

{00116366.DOC; 5}

Convention, is present." *Id.* Article V of the New York Convention enumerates the exclusive grounds on which an enforcing court may refuse recognition and enforcement of an award. *See id.* (citing *Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp.,* 512 F.3d 742, 747 (5th Cir. 2008)). The grounds are strictly limited and are narrowly construed. *Id.* (citing *Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Medical & Scientific Corp.,* 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005)).

Here, Tricon has presented all the materials required by the FAA and the New York Convention. Vinmar's Answer to Tricon's Petition and its Motion to Vacate only repeat arguments already fully presented to, and unanimously rejected by, the Panel. Neither Vinmar's Answer to Tricon's Petition nor its Motion to Vacate presents any evidence in support of Vinmar's conclusory assertions. Vinmar has offered nothing other than broad citations to the Convention's grounds for non-recognition, and thus fails to carry its burden of proof. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 288 (5th Cir. 2004). Because Vinmar has failed to satisfy its burden of proof under both the FAA and New York Convention, Tricon's Petition to Confirm should be summarily granted and Vinmar's Motion to Vacate should be summarily denied. As a "district court [is] well within its discretion to dispose of the issues before it on the record submitted by the parties," Tricon requests that this court grant its Petition without further hearings or proceedings. *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987); *see also Imperial Ethiopian Gov't v. Baruch-Foster Corp.,* 535 F.2d 334, 337 n.10 (5th Cir. 1976) (New York Convention involves summary procedures, so district court "was not required to resort to the formal taking of testimony or deposition procedures in order to determine" the issue before it); *Pillar to Post,*

{00116366.DOC; 5}

2010 WL 2636121, at *2 ("Defendants' conclusory assertions fail to carry their burden, and fail as well to show cause for a hearing.").

## C.  Vinmar's Arguments Have No Merit

The vast majority of Vinmar's arguments in both its Answer to Tricon's Petition and its Motion to Vacate are merely repeated assertions that Tricon and Vinmar did not have an enforceable contract that contained an arbitration provision. All this was fully presented to, and unanimously rejected by, the Panel. Below, Tricon will first show that Vinmar's assertion that the parties failed to make an enforceable contract has no merit, and then will show that Vinmar's few remaining arguments are frivolous.

The dispute between Tricon and Vinmar is governed by the Texas Uniform Commercial Code - Sales, TEX. BUS. & COM. CODE § 2.101 *et seq.*, ("Texas UCC") because it arises out a conflict over a contract, formed and accepted in Texas, for the sale of goods. *See* TEX. BUS. & COM. CODE § 2.102.[2]  Under the Texas UCC, there can be no dispute that the parties had a binding and enforceable contract that included an agreement to arbitrate.

### 1.    The Panel Had the Authority to Determine its Own Jurisdiction

As a threshold matter, Vinmar's unsupported assertion that whether there is an agreement to arbitrate is a question reserved exclusively for the courts is wholly without merit. The Panel clearly had authority to determine its own jurisdiction absent Vinmar filing a motion to stay, and Tricon was not required to file a motion to compel arbitration.

This was recently confirmed by the Corpus Christi Court of Appeals in *In re Rio Grande Xarin II, Ltd.*, Nos. 13-10-00115-CV, 13-10-00116-CV, 2010 WL 2697145 (Tex. App.—Corpus

---

[2]  Moreover, according to the parties' contract, they agreed that: "This contract and the rights and duties of the parties arising out of this contract shall be governed by and construed, enforced, and performed in accordance with the laws of the state of Texas, including, without limitation, the Uniform Commercial Code as in effect in the state of Texas. . . ." (Ex. E ¶ 3).  Accordingly, the Texas UCC governs this dispute.

{00116366.DOC; 5}

Christi July 6, 2010, pet. dism'd).  In *Rio Grande*, the court rejected an attempt to vacate an arbitral ruling based on the mere fact that the plaintiff did not first seek permission from a trial court to proceed with arbitration, even though the respondent had objected to arbitrability from the outset.  The court concluded that "[r]equiring a party who is initiating arbitration pursuant to contract to institute litigation prior to arbitration is *nonsensical*" as it "deprives the parties of the benefits of the contracted-for arbitration clause and defeats the purpose of providing a rapid, inexpensive alternative to traditional litigation."  *Id.* at *6 (emphasis added and internal quotation marks omitted).  Indeed, "[t]he purpose of an arbitration provision or agreement is to prevent subjecting the parties to litigation in the event of a dispute."  *Id.*

Although both the Texas and Federal arbitration statutes permit a party to institute court proceedings to obtain an order compelling arbitration, Texas law is clear that "they do not require it."  *Id.* at *7; *see also Perry Homes v. Cull*, 258 S.W.3d 580, 592 (Tex. 2008) (noting that "parties may begin arbitration without a court order. . . .").  Both statutes also "contemplate that parties seeking to avoid arbitration may also seek a remedy in court."  *Rio Grande*, 2010 WL 2697145, at *7 (citing 9 U.S.C. § 16(a)(1)(A); Tex. Civ. Prac. & Rem. Code § 171.098(a)(2)).  Vinmar chose not to exercise its option to pursue a motion to stay.

Vinmar cannot save its "nonsensical" argument by pointing to the unremarkable proposition that, *if* a party has filed either a motion to compel or motion to stay arbitration with a court of competent jurisdiction, then a court would decide arbitrability as a threshold issue.  *See, e.g.*, *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (discussing proper procedure to follow in context of motion to compel arbitration and stay litigation).  Tellingly, no such motion was ever filed.  As held by the *Rio Grande* court, Vinmar does not

{00116366.DOC; 5}

obtain a stay of arbitration proceedings by *not filing* a motion to stay with any court. *See Rio Grande*, 2010 WL 2697145, at *7.[3]

It is immaterial that the Panel's arbitrability decision is now "subject to independent review by the courts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 115 S. Ct. 1920 (1995). No one disputes that, but it is totally irrelevant to whether the panel had jurisdiction to proceed. Vinmar can point to *no* case holding that an arbitration panel lacks the authority to decide its own jurisdiction where the judicial process has not been invoked by any party. To the contrary, the AAA Commercial Arbitration Rules further confirm that the Panel had authority to proceed. The Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rule R-7(a). As Vinmar chose not to file a motion to stay, the Panel unquestionably had jurisdiction to determine both arbitrability and the merits of Tricon's claims.

> **2.      The Parties Had An Enforceable Contract That Contained An Arbitration Provision and Satisfied the Statute of Frauds**
>
> > **a.      The Broker's Confirmation Was Modified and Added to by the Tricon Letter**

The parties had an enforceable agreement no later than July 23, 2008, the date the broker sent out a confirmation reflecting the correct terms to which the parties had agreed. However, the parties plainly were free to subsequently add to or modify those terms. *See* TEX. BUS. & COM. CODE § 2.209(a) ("An agreement modifying a contract within this chapter needs no

---

[3] "Our decision on this issue is further compelled by the factual circumstances underlying this matter. Rio Grande first indicated its intention to institute arbitration proceedings on February 27, 2009. On March 23, the AAA notified the parties that it would proceed with administration of arbitration 'in the absence of an agreement by the parties or a court order staying this matter.' On April 1, Wolverine acknowledged its ability to file suit to avoid arbitration, yet failed to file suit until July 7, the eve of arbitration and more than three months after the AAA instituted proceedings, and, in fact, never sought to stay the arbitration."

{00116366.DOC; 5}

consideration to be binding."). Thus, pursuant to § 2.209, the terms of the Tricon Letter to which Vinmar assented in its July 29, 2008 email to Tricon—including the arbitration provision—were binding on the parties. *See* Ex. G.

In a similar case, *In re Laibe Corp.*, 307 S.W.3d 314 (Tex. 2010), the plaintiff argued against enforcement of a forum selection clause contained in a later agreement, where the original purchase order did not have any such provision. The Supreme Court of Texas disagreed, citing § 2.209(a). According to the Court, "an agreement modifying a contract for the sale of goods requires no new consideration to be binding." *Id.* at 317. Because the contract as a whole did not lack consideration, the new terms contained in the later agreement, including the forum selection provision, governed. *Id.*; *see also Graybar Elec. Co., Inc. v. LEM & Assocs., L.L.C.*, 252 S.W.3d 536, 546 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("change order" that modified contract fell under § 2.209, so "no consideration is needed for it."). The Court further noted that "a contract can consist of more than one document. Documents 'pertaining to the same transaction may be read together,' even if they are executed at different times and do not reference each other, and 'courts may construe all the documents as if they were part of a single, unified instrument.'" *In re Laibe*, 307 S.W.3d at 317 (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)).

The fact that the broker's confirmation did not contain an arbitration provision is irrelevant, as parties plainly can modify a binding agreement. Here, Vinmar accepted most of the terms in the Tricon Letter—including the arbitration provision—in its July 29, 2008 email to Tricon. (Ex. G). Tricon promptly accepted Vinmar's proposals, noting that "your comments on the contract [are] well noted and accepted. . . ." (Ex. H). Having negotiated and agreed to the

{00116366.DOC; 5}

additional terms proposed in the Tricon Letter, including arbitration, Vinmar cannot now escape enforcement of those terms. *See In re Laibe*, 307 S.W.3d at 317.

> **b.** **Alternatively, the Tricon Letter is an Enforceable Contract Pursuant to Article 2.207**

Even if the broker's confirmation was not a binding contract—and it plainly was[4]—the result is no different, as the Tricon Letter is a binding contract under TEX. BUS. & COM. CODE § 2.207(a). Under § 2.207(a), "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon. . . ." According to Comment 1 to this section, it "is intended to deal with two typical situations." *Id.* cmt. 1. The first is where the writing constitutes a written confirmation of an agreement that has been reached either orally or by informal correspondence between the parties. *Id.* Under this scenario, the written confirmation can "add[] terms not discussed." *Id.* The second situation is "offer and acceptance," where the "acceptance" contains new or different terms from the offer. *Id.* The Tricon Letter satisfies either situation.

> **i.** **If the Amended Broker's Confirmation is Not Binding, the Tricon Letter was a Written Confirmation of the Parties' Informal Agreement**

Tricon and Vinmar had an enforceable contract when the broker obtained the assent of both parties to the material terms of the deal. Where the deal is negotiated through a broker, the broker has authority to act on behalf of both the buyer and seller. *Den Norske Stats Oljeselskap, A.S. v. Hydrocarbon Processing, Inc.*, 992 F. Supp. 913, 915 (S.D. Tex. 1998). If for some reason the court concludes that the broker's confirmation is not a

---

[4] *See, e.g.*, *Den Norske Stats Oljeselskap, A.S. v. Hydrocarbon Processing, Inc.*, 992 F. Supp. 913, 915 (S.D. Tex. 1998) ("[Broker] conveyed Statoil's offers to Hydro and Hydro's acceptance to Statoil. It then confirmed the transactions by telephone and fax. That is simple contract formation-offer and acceptance-occurring through a broker and documented in faxes.").

{00116366.DOC; 5}

satisfactory written memorial of that agreement sufficient to satisfy the statute of frauds, then the Tricon Letter is a binding contract under the first § 2.207(a) situation—a written confirmation of a prior oral and/or informal agreement.

It is immaterial whether the parties had discussed arbitration prior to Vinmar's receipt of the Tricon Letter, as § 2.207 specifically permits the written confirmation to "state[] terms additional to or different from those offered or agreed upon. . . ." TEX. BUS. & COM. CODE § 2.207(a). Whether those additional terms became part of the parties' contract is dependent on § 2.207(b). *See Id.* cmt. 3. Under that provision, the additional terms, including the arbitration provision, became part of the agreement unless: "(1) the offer expressly limits acceptance to the terms of the offer; (2) they materially alter it; or (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." TEX. BUS. & COM. CODE § 2.207(b). None of these exceptions apply. The offer did not did not expressly limit acceptance to the terms provided therein (indeed both parties consented to minor changes requested by the other), neither the arbitration provision nor the other suggested terms materially altered the transaction, and no objection to the majority of the terms ever was received until Tricon instituted these proceedings. To the contrary, Vinmar agreed to the bulk of the proposed terms, including the arbitration provision, in its July 29, 2008 email to Tricon. (Ex. G). Indeed, Vinmar's own internal purchase order also reflected an arbitration provision.[5] (Ex. I). Thus, those terms became part of the parties' agreement. *See Ceco Corp. v. Steves Sash & Door Co., Inc.*, 714 S.W.2d 322, 327 (Tex. App.—San Antonio 1986), *mod'd and rev'd in part on other grounds by*, 751 S.W.3d 473 (Tex. 1988).

---

[5] Vinmar's Laurentiu Pascu testified to the authenticity of this document. *See* Ex. J at 48:8-20.

### ii.   Vinmar Accepted the "Offer" in the Tricon Letter

Even if the brokered transaction did not result in a binding contract—which it plainly did—under § 2.207(a), the Tricon Letter constitutes an offer and Vinmar's July 29, 2008 email agreeing to most of the terms set forth therein—including the arbitration provision—constitutes the acceptance.  To the extent Vinmar's July 29, 2008 email proposed any changes to the terms of the Tricon Letter, those proposed changes are relevant only in identifying the final terms of the contract under TEX. BUS. & COM. CODE § 2.207(b).  They do not alter the conclusion that a contract was formed.  *See Tri-State Petroleum Corp. v. Saber Energy, Inc.*, 845 F.2d 575, 578-79 (5th Cir. 1988) (where a written contract sent by the first party is returned by the second party, but altered by additional or different terms, § 2.207(a) allows the return of the contract to act as acceptance of the offer with the alterations as proposals for additions to the contract); *see also Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 198-99 (Tex. App.–Austin 1992, no writ).  Significantly, Tricon accepted all of Vinmar's proposed changes, except for the demurrage time bar, which is not at issue in this case.  (Ex. H).  Thus, under any scenario, the Tricon Letter's arbitration provision because a binding part of the parties' agreement on July 29, 2008, the date it was accepted by Vinmar.

### c.   The Tricon Letter Was Signed by Vinmar and Satisfies the Statute of Frauds

The Tricon Letter was signed by Vinmar and therefore satisfies the Texas UCC's statute of frauds.  Notably, the UCC does not require that the parties take pen to paper and write their names for the writing to be "signed."  Rather, the UCC defines "signed" broadly as "using any symbol executed or adopted with present intention to adopt or accept a writing."  TEX. BUS. & COM. CODE § 1.201(b)(37); *see also id.* § 2.201 cmt. 1 (the term "signed" "includes any

{00116366.DOC; 5}

authentication which identifies the party to be charged.").[6]   Texas courts have held that invoices, letterhead, and letters discussing the agreement all can satisfy the statute of frauds. *See, e.g.*, *Cox Eng'g, Inc. v. Funston Mach. & Supply Co.*, 749 S.W.2d 508, 511 (Tex. App.—Fort Worth 1988, no writ) (invoice letterhead constituted signature under § 1.201); *Central Power & Light Co. v. Del Mar Conservation Dist.*, 594 S.W.2d 782, 790 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.) ("[A] valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract, or even to a third party. . . ."); *Taggart v. Crews*, 521 S.W.2d 703, 708 (Tex. App.—San Antonio 1975, writ ref'd n.r.e.) (same).

Vinmar's assent to the Tricon Letter is abundantly clear. It "signed" the Tricon Letter in its July 29, 2008 email to Tricon, agreeing to most of its terms, including the arbitration provision. (Ex. G). Vinmar's representative, Laurentiu Pascu, not only made handwritten comments to the Tricon Letter, he signed the memorandum to Tricon with his email signature, "Laurentiu Pascu, Vinmar International, Ltd." *Id.* This easily satisfies the UCC statute of fraud's flexible requirements. *See* Tex. Bus. & Com. Code § 1.201(b)(37); *id.* cmt. 37; Tex. Bus. & Com. Code § 2.201; *see also D & M Edwards, Inc. v. Bio-Cide Int'l, Inc.*, No. 3:08-CV-0670-L, 2009 WL 102732, at *3 (N.D. Tex. Jan. 4, 2009) (granting leave to amend pleadings to attach e-mail that would be sufficient to satisfy the statute of frauds); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295-96 (7th Cir. 2002) ("[T]he sender's name on an e-mail satisfies the signature requirement of the statute of frauds."); *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1362 (Fed. Cir. 2005) (name on email satisfies the statute of frauds); 15 U.S.C.

---

[6]   *See also id.* ("The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. It may be written in lead pencil on a scratch pad.

{00116366.DOC; 5}

§ 7001(a)(1) ("[A] signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."). Accordingly, Vinmar is bound to the terms included therein, including the arbitration provision. Vinmar's contention that there is no arbitration provision and that the Panel lacked jurisdiction over the dispute is meritless.

### 3.      Vinmar's Other Complaints Are Frivolous

#### a.      Review of Arbitration Awards is Exceedingly Deferential

Vinmar asserts several other purported reasons that this Court should disregard the Panel's reasoned Award, none of which have merit. As emphasized by the Fifth Circuit, judicial review of arbitration awards is "exceedingly deferential." *Saipem Am. v. Wellington Underwriting Agencies Ltd.*, 335 F.App'x 377, 379 (5th Cir. 2009) (quoting *Am. Laser Vision*, 487 F.3d at 258). The award "must be upheld if it is rationally inferable from the letter or purpose of the underlying agreement." *Id.* at 379-80 (internal quotation marks omitted).

Notably, the Fifth Circuit recently held that "manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA." *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009) (citing *Hall Street Assocs.*, 552 U.S. 576). Thus, the only grounds for non-recognition of an arbitration award under the Federal Arbitration Act ("FAA") are: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators

---

It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term. . . .").

{00116366.DOC; 5}

exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a); *see also Citigroup Global*, 562 F.3d at 353.

Grounds for non-recognition also are sharply limited under the New York Convention.  Indeed, the court "is limited to deciding whether the award may be enforced in that country."  Under Section 207, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  Pursuant to that Convention, an arbitration award is invalid where a) the parties were under an incapacity or the arbitration agreement was invalid; b) proper notice of the arbitration was not given; c) the award is beyond the scope of the submission to arbitration; d) the tribunal's composition or procedure was not in accordance with the parties' agreement or applicable law; or e) the award is not yet binding on the parties or has been set aside.  New York Convention, Art. V(1).  Additionally, a court *may* disregard an award where a) the dispute's subject matter is not arbitrable under the applicable law; or b) recognition or enforcement of the award is "contrary to the public policy of that country [where recognition is sought]."  *Id.* Art. V(2).

> ### b.  Vinmar's Additional Complaints—Even if True—Do Not Present Grounds to Disregard the Panel's Award
>
> #### i.  The Award Does Not Violate Public Policy

Vinmar sets forth purported "defenses" under the auspices of Article V(2)(b)'s public policy prong.  However, the Fifth Circuit has instructed that "[t]he public policy defense is to be 'construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.'"  *Karaha Bodas*, 364 F.3d at 306 (quoting *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n.2 (6th Cir. 1996)).  Moreover, the

Convention has a "pro-enforcement bias," which "points to a narrow reading of the public policy defense.  Erroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the New York Convention."  *Id.* (internal quotation marks and citations omitted).  Vinmar can point to no "basic notion of morality and justice" that was allegedly violated by the Panel, so its citation to Article V(2)(b) fails as a matter of law.

### ii.     Vinmar's Complaint Regarding the Scope of the Award is Not a Ground for Non-Recognition

Vinmar's last ditch argument is that the Award violates the FAA because the legal principles on which the Panel ruled were not set forth in Tricon's pleadings.  Vinmar's citations to 9 U.S.C. § 10(a)(3) (arbitrator bias) & (4)  (exceeding of powers by the arbitrators) notwithstanding, this is not a basis for non-recognition.  Indeed, it amounts to little more than a "manifest disregard" argument, which is no longer a basis for vacatur.  *See United Forming, Inc. v. Faulkner USA, LP*, 350 F.App'x 948, 950 (5th Cir. 2009).  Indeed, "[t]he FAA seems to limit 'misconduct' to cases in which an arbitrator denies a postponement of the hearing or refuses to hear material evidence."  *Id.* at 950 n.6 (quoting *Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 811 (Tex. App.—Dallas 2008, pet. denied)).

Similarly, in determining whether "the arbitrators exceeded their powers" under Section 4, the court must "resolve all doubts in favor of arbitration."  *HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*, 243 F.App'x 838, 842 (5th Cir. 2007) (quoting *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir. 1994)).  The only question is "whether the award, however arrived at, is rationally inferable from the contract."  *Kimco Birmingham LP v. Third Creek LLC*, No. 3:07-CV-1642-O, 2010 WL 147942, at *3 (N.D. Tex. Jan. 14, 2010) (quoting *Am. Laser Vision,* 487 F.3d at 259).  A reviewing court may "not second-guess multiple, implicit findings and conclusions underpinning the award nor will it decide if the award

was free from error." *Id.* Indeed, "the factual and legal accuracy of arbitrators' findings will not be reviewed." *Id.* (quoting *Amalgamated Meat Cutters & Butcher Workmen of North Am., Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.,* 481 F.2d 817, 819 (5th Cir. 1973)). Vacatur under this provision is warranted "only if 'the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the . . . agreement as to manifest an infidelity to the obligation of an arbitrator.'" *Sungard Energy Sys. Inc. v. Gas Transmission Northwest Corp.,* 551 F. Supp. 2d 608, 618 (S.D. Tex. 2008) (quoting *Executone,* 26 F.3d at 1320). Thus, to succeed under Section 4, Vinmar must establish that the award "does not draw its essence from the contract." *Green v. Serv. Corp. Int'l,* No. H-06-833, 2008 WL 4056325, at *4 (S.D. Tex. Aug. 25, 2008). Arguing about the specific bases for the Panel's Award is wholly insufficient.

Moreover, even if Vinmar's arguments were a legally recognized ground for non-recognition, they fail as a factual matter. Tricon has consistently argued that the broker's confirmation was a legally binding contract, which later was supplemented by the terms of the Tricon Letter. *See* Ex. K-L[7] (Tricon's Amended Specification of Claims and Prehearing Brief). Tricon specifically argued the issue of modification under § 2.209 several months before the hearing, in response to Vinmar's Motion to Dismiss. (Ex. M). Similarly, the Panel's Award was based on the method of damages set forth in Tricon's Amended Specification of Claims. *See* Ex. K. Tricon additionally presented evidence that it was a lost volume seller throughout the hearing, as well as in its post-hearing briefing. *See, e.g.,* Ex. N (11/03/10 letter to Panel). Vinmar's complaints lack merit and should be disregarded.

---

[7] Due to their volume, Tricon has not included the exhibits to these pleadings. It will supplement the record with these exhibits at the Court's request.

{00116366.DOC; 5}

### 4.    Tricon Has Satisfied the New York Convention

Contrary to Vinmar's vague assertions, Tricon has satisfied the New York Convention's requirements.   Under the New York Convention, "[t]he party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation."  *China Nat'l Bldg. Material Inv. Co.*, 2009 WL 4730578, at *2 (citing the New York Convention, Art. IV; *Jiangsu Changlong Chems.*, 399 F. Supp. 2d at 168).  Upon submission of these materials, the burden shifts to the party opposing confirmation to establish the presence of a ground for non-recognition.  *Id.*  Tricon submitted a certified copy of the award as Exhibit A to its Petition to Confirm.  Additionally, Tricon submitted the documents comprising the agreement to arbitration as Exhibits E and G-H to its Petition, along with an affidavit from Mr. Lockwood, certifying the documents' authenticity.  There thus can be no doubt that Tricon has satisfied the New York Convention. *See Trans Chem. Ltd.*, 978 F. Supp. at 309; *Overseas Cosmos, Inc. v. NR Vessel Corp.*, No. 97 CIV. 5898(DC), 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997).

### 5.    The Panel Had Authority to Award Costs to Tricon

Vinmar's contention that the Panel lacked the authority to award Tricon attorneys' fees in the event of judicial proceedings necessary to confirm the Award is meritless.  Courts routinely enforce arbitrators' awards of contingent attorneys' fees.  *See, e.g., Kimco Birmingham*, 2010 WL 147942, at *2 (confirming arbitration award of $50,000 "in the event of an unsuccessful appeal of the award to a state or federal court"); *Toomer v. Receivables Mgmt., Inc.*, No. 1:08-cv-00467-LY, 2010 WL 5071778 (W.D. Tex. Dec. 9, 2010) (entering judgment on arbitrator's award of additional attorneys' fees for "motions to enter judgment in federal court and to defend against any motions to vacate the arbitration award.").

{00116366.DOC; 5}

**6.     Vinmar is Not Entitled to its Attorneys' Fees**

Finally, even if Vinmar were to be somehow successful in having this court set aside the Panel's reasoned Award, it would not be entitled to its attorneys' fees.  Neither the FAA nor the New York Convention allow for the recovery of attorneys' fees in a motion to vacate, so Vinmar's request should be denied.  *See* 9 U.S.C. § 10; 9 U.S.C. § 207.

## IV.     CONCLUSION AND PRAYER

WHEREFORE PREMISED, Tricon Energy, Ltd. respectfully requests that this court grant its motion to confirm and deny Vinmar's motion to vacate.  Tricon additionally requests any such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

By: _____
George R. Diaz-Arrastia
State Bar No. 05805600
S. D. Texas Bar No. 12
Tracy D. Larsen
State Bar No. 24055410
S.D. Texas Bar No. 840430
Pennzoil Place, North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
Email: gdarrastia@sdablaw.com

ATTORNEYS FOR PLAINTIFF
TRICON ENERGY, LTD.

18

{00116366.DOC; 5}

## CERTIFICATE OF SERVICE

I HERE BY CERTIFY that on this 24th day of January 2011 a copy of the foregoing was electronically served and/or delivered via first-class mail to:

Stephen H. Lee
R. Blake Runions
Porter & Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Tracy D. Larson

19