IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON ENERGY, LTD., | § | |
| | § | |
| Plaintiff, | § | CASE NO.  4:10-cv-05260 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| VINMAR INTERNATIONAL, LTD., | § | |
| | § | |
| Defendant. | § | |

## VINMAR INTERNATIONAL, LTD.'S
## MOTION TO VACATE ARBITRATION AWARD

Stephen H. Lee
State Bar No. 00791092
Southern Dist. Bar No. 18313
**Porter Hedges LLP**
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone:  713-226-6686
Facsimile:  713-226-6286
E-Mail:  slee@porterhedges.com
**ATTORNEY-IN-CHARGE FOR**
**VINMAR INTERNATIONAL, LTD.**


**OF COUNSEL:**
Daniel K. Hedges
State Bar No. 09369500
R. Blake Runions
State Bar No. 24060533
**Porter Hedges LLP**
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone:  713-226-6641
Facsimile:  713-226-6241

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES................................................................................ ii

I.    NATURE AND STAGE OF PROCEEDING................................................. 1

II.   STATEMENT OF ISSUES AND STANDARD OF REVIEW ........................... 2

III.  SUMMARY OF ARGUMENT ................................................................... 3

IV.   ARGUMENT ........................................................................................ 4

    A.  The Absence of an Agreement to Arbitrate Provides a Basis to Vacate the Award........... 4

    B.  The Court Must Decide If There Is An Agreement to Arbitrate........................................ 6

    C.  Vinmar Did Not Waive Its Objection to Arbitration. ......................................................... 7

    D.  There Is No Agreement to Arbitrate, Rendering the Award Unenforceable. .................... 9

        1.  Tricon's Claim is Based on a Letter That Admittedly Does Not Contain An Arbitration Agreement. ................................................................................... 9

        2.  Tricon's Claim of Contract Modification Fails.................................................... 10

V.    CONCLUSION .................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Petrade Int'l, Inc.,*
    754 S.W.2d 696 (Tex. App.—Houston [1st Dist.] 1988, writ denied)..........................14

*Adkins v. Sogliuzzo,*
    2010 WL 502980 (D.N.J. Feb. 9, 2010) ..................................................................3

*Avedon Engineering, Inc. v. Seatex,*
    126 F.3d 1279 (10th Cir. 1997) ...........................................................................6

*China Minmetals Import & Export Co., Ltd. v. Chi Mei Corp.,*
    334 F.3d 274 (3rd Cir. 2003)..........................................................................4, 5

*Czarina, L.L.C. v. W. F. Poe Syndicate,*
    358 F.3d 1286 (11th Cir. 2004) ...........................................................................2

*Echo, Inc. v. Whitson Co,*
    121 F.3d 1099 (7th Cir. 1997) ...........................................................................11

*First Options of Chicago, Inc. v. Kaplan,*
    115 S. Ct. 1920 (1995)...........................................................................2, 3, 5, 6, 7, 9

*Freudensprung v. Offshore Technical Services, Inc.,*
    379 F.3d 327 (5th Cir. 2004) ...........................................................................5

*Granite Rock Co. v. International Brotherhood of Teamsters,*
    130 S. Ct. 2847 (2010)...........................................................................2, 6

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.,*
    2005 WL 1118130 (D. Kan. May 10, 2005) .....................................................4, 5

*Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.,*
    512 F.3d 742 (5th Cir. 2008) ...........................................................................5

*Holcim (Texas) Ltd. Partnership v. Humboldt Wedag, Inc.,*
    211 S.W.3d 796 (Tex. App.—Waco 2006, no pet. ) ..........................................5, 9

*In re Bunzl USA, Inc.,*
    155 S.W.3d 202 (Tex. App.—El Paso 2004, pet. denied)...........................................13

*Janiga v. Questar Capital Corp.,*
    615 F.3d 735 (7th Cir. 2010) ...........................................................................7

*Koons v. Impact Sales & Marketing Group, Inc.,*
    2007 WL 4292423 (Tex. App.—Fort Worth Dec. 6, 2007, no pet.)...........................14

*Millmaker v. Bruso,*
    2008 WL 4560624 (S.D. Tex. Oct. 9, 2008) .....................................................3, 10

*ODL Services, Inc. v. ConocoPhillips Co.,*
    264 S.W.3d 399 (Tex. App.—Houston [1st Dist.] 2008, no pet.)................................. 10

*Parker Drilling Co. v. Romfor Supply Co.,*
    316 S.W.3d 68 (Tex. App.—Houston [14th Dist.] 2010, pet. filed) ............................ 12

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,*
    636 F.2d 51 (3rd Cir. 1980)......................................................................................... 3

*Saipem America, Inc. v. Wellington Underwriting Agencies, Ltd.,*
    2008 A.M.C. 1022, 1028-29, 2008 WL 2276210 (S.D. Tex. March 18, 2008).............. 5

*Scaife v. Associated Air Center, Inc.,*
    100 F.3d 406 (5th Cir. 1996) ..................................................................................... 14

*Simmons & Simmons Const. Co. v. Rea,*
    286 S.W.2d 415 (Tex. 1955) ...................................................................................... 13

*Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.,*
    2009 WL 3673823 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.).......... 10, 11

*Will-Drill Resources, Inc. v. Samson Resources Co.,*
    352 F.3d 211 (5th Cir. 2003) .................................................................................. 3, 7


**Statutes**
Federal Arbitration Act ........................................................................................... 4, 5, 6
Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4)....................................................... 5


**Other Authorities**
Convention on the Recognition and Enforcement of Foreign Arbitral Awards ......... 4, 5, 6

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON ENERGY, LTD., | § | |
| | § | |
| Plaintiff, | § | CASE NO. 4:10-cv-05260 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| VINMAR INTERNATIONAL, LTD., | § | |
| | § | |
| Defendant. | § | |

**VINMAR INTERNATIONAL, LTD.'S
MOTION TO VACATE ARBITRATION AWARD**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE LEE H. ROSENTHAL:

Vinmar International, Ltd. ("Vinmar") moves to vacate the arbitration award entered in favor of Tricon Energy, Ltd. ("Tricon") and would show the Court as follows:

## I.   NATURE AND STAGE OF PROCEEDING

1.    This case arises out of a failed attempt to reach an agreement for the purchase of a fuel known as mixed xylenes ("MX"). Through a chemicals broker, Tricon expressed its interest in selling MX, while Vinmar, through this same broker, expressed its interest in purchasing MX. The broker eventually claimed a deal had been struck and sent letters to both parties to confirm the "agreement."[1]  The purported agreement negotiated by the broker did not include any agreement to arbitrate and the broker's several attempts to reduce the alleged agreement to writing also did not contain an

---

[1]    Vinmar denies the existence of a contract, or that it breached a contract, or that Tricon sustained any damages as a result of any purported breach.  However, since this Court's jurisdiction is limited to vacating the award and these other matters are not directly germane to this motion, Vinmar will reserve its arguments for another day.

agreement to arbitrate.  Even so, when a dispute later arose over the terms of the supposed agreement, Tricon filed a claim in arbitration.

2.      In response to Tricon's decision to resort to arbitration and throughout the pendency of that arbitration, Vinmar objected to the jurisdiction of the American Arbitration Association ("AAA") and the tribunal empanelled by AAA because there was no contract and no agreement to arbitrate between Tricon and Vinmar.  In spite of Vinmar's objections, the panel heard the case and purported to enter an award in favor of Tricon.  Thereafter, Tricon filed suit in this Court seeking to confirm the award.[2]  Vinmar answered Tricon's suit and asserted a counterclaim seeking to vacate the award because AAA did not have jurisdiction to decide the dispute.

## II.   STATEMENT OF ISSUES AND STANDARD OF REVIEW

3.      This motion presents one issue – whether the award should be vacated because there was no valid agreement to arbitrate.  And, it is well settled that a Court, not an arbitrator, must decide the question of arbitrability.  *First Options of Chicago, Inc. v. Kaplan*, 115 S. Ct. 1920, 1924 (1995); *see also Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010) ("it is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").  Contrary to Tricon's assertions, the award is not entitled to any deference and this Court must decide whether there was an agreement to arbitrate just as it would decide any other question that was not submitted to arbitration – namely,

---

[2]      Tricon bears the burden to supply the Court with proof of a written agreement to arbitrate to support confirmation of the award.  *See, e.g., Czarina, L.L.C. v. W. F. Poe Syndicate*, 358 F.3d 1286, 1292-93 (11th Cir. 2004).  Without a written agreement, this Court cannot confirm the award.

independently. *First Options*, 115 S. Ct. at 1924. To determine whether this dispute is subject to arbitration, the Court should apply state law contract formation principles. *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 212 (5th Cir. 2003). To the extent there are genuine issues of material fact surrounding the making of an agreement, Vinmar is entitled to a trial by jury. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3rd Cir. 1980); *see also Adkins v. Sogliuzzo*, 2010 WL 502980 at *9 (D.N.J. Feb. 9, 2010) (recognizing right to jury trial to determine existence of valid arbitration agreement).

## III.   SUMMARY OF ARGUMENT

4.   The AAA arbitration award should be vacated because there was no agreement to arbitrate. *See, e.g., Millmaker v. Bruso*, 2008 WL 4560624 (S.D. Tex. Oct. 9, 2008) (vacating arbitration award against individual because there was no agreement to arbitrate). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options*, 115 S. Ct. at 1924. In this case, it is undisputed that the purported contract which forms the basis of Tricon's claim and the panel's award did not contain an agreement to arbitrate. Without an agreement to arbitrate, AAA acquired no jurisdiction and could not issue a valid award. Since the award is invalid, this Court must set it aside.

5.   The sole basis of support for AAA's jurisdiction is Tricon's claim that the alleged contract was modified to include an arbitration provision. Tricon bears the burden of proof in this Court to establish that the alleged contract was modified to

include an arbitration provision. However, Tricon's only proof of contract modification is an e-mail from a Vinmar employee commenting on certain provisions in an unsigned draft sales proposal. This evidence fails to meet the elements of contract modification, rendering the award invalid.

## IV.   <u>ARGUMENT</u>

6.       When faced with a request to enforce an arbitration award, this Court is required to independently determine the arbitrability of the dispute. *China Minmetals Import & Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 289 (3rd Cir. 2003); *see also Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, 2005 WL 1118130 at *8 (D. Kan. May 10, 2005) (holding that Court must make independent determination of the arbitrability of the dispute). If there was no agreement to arbitrate, the award must be vacated.

### A.    The Absence of an Agreement to Arbitrate Provides a Basis to Vacate the Award.

7.       It is well established that the absence of an arbitration agreement constitutes a valid basis to vacate an arbitration award. This is true whether the Court applies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") or the Federal Arbitration Act (the "FAA"). Tricon filed this case in this Court based on a claim that the New York Convention applied to the award issued by the panel.[3] However, since the award was rendered in Houston, Texas,

---

[3]       Although the New York Convention may apply, Vinmar will file an action in Texas state court to ensure its right to seek vacatur of the award is preserved in the event this Court determines that it does not have subject matter jurisdiction.

this Court is not restricted to the grounds set forth in the New York Convention and may instead set aside the award in accordance with "domestic arbitral law and its full panoply of express and implied grounds for relief." *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008).   Domestic law includes the FAA. *See Saipem America, Inc. v. Wellington Underwriting Agencies, Ltd.*, 2008 A.M.C. 1022, 1028-29, 2008 WL 2276210 at *6 (S.D. Tex. March 18, 2008) (Hittner, J.).   Thus, this Court may rely on the New York Convention or the FAA in setting aside the award in this case.   *See Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 341 (5th Cir. 2004).

8.   This Court action is clear no matter which law is applied.   In an exhaustive review of the New York Convention and the FAA, the Third Circuit expressly held that the lack of a valid agreement to arbitrate *requires* a court to set aside the arbitration award:

> We therefore hold that a district court should refuse to enforce an arbitration award under the Convention where the parties did not reach a valid agreement to arbitrate, at least in the absence of waiver of the objection to arbitration by the party opposing enforcement.

*China Minmetals*, 334 F.3d at 286; *see also Guang Dong*, 2005 WL 1118130 at *8.   The FAA also *requires* the Court to set aside an arbitration award when there was not a valid agreement to arbitrate.   *First Options*, 115 S. Ct. at 1925-26.[4]   As a result, under either

---

[4]   Texas law also recognizes that an award must be set aside when there is no valid agreement to arbitrate.   *See* TEX. CIV. PRAC. & REM. CODE § 171.088(a)(4); *see also Holcim (Texas) Ltd. Partnership v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 802-03 (Tex. App.—Waco 2006, no pet.).

the New York Convention or the FAA, if there was no agreement to arbitrate, the award must be vacated.

### B.  The Court Must Decide If There Is An Agreement to Arbitrate.

9.     It is well settled that a court, not arbitrators, must decide "gateway matters" such as whether a valid arbitration agreement exists.  *See First Options,* 115 S. Ct. at 1924; *see also Granite Rock Co.,* 130 S. Ct. at 2855-56 ("it is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").  Where the existence of an agreement to arbitrate is at issue, it is for the courts to decide based on contract formation principles.  *See Avedon Engineering, Inc. v. Seatex,* 126 F.3d 1279, 1287 (10th Cir. 1997) ("we look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached").  From the outset, Vinmar challenged the very existence of an agreement to arbitrate because the parties never reached a final, binding contract and, if they did, the alleged contract did not contain an agreement to arbitrate.[5]  Both of Vinmar's challenges go to the very question of whether there was an agreement to arbitrate.

10.     Since arbitration is a matter of contract, if a party claims it has not agreed to arbitrate, a court must determine whether there is an agreement to arbitrate:

> We base our answer on the fundamental principle that arbitration is a matter of contract which cannot be forced upon a party absent its consent.  Where the very existence of any agreement is disputed, it is for the courts to decide at the

---

[5]     *See* March 18, 2009 correspondence to AAA objecting to arbitration (Appendix Tab A), *and* April 8, 2009 correspondence to AAA (Appendix Tab B).  Due to the volume, the exhibits offered in support of this Motion to Vacate are included in a separate Appendix filed concurrently herewith.

> outset whether an agreement was reached, applying state-law
> principles of contract.

*Will-Drill*, 352 F.3d at 218; *see also Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010) (holding that court, not arbitrator, decides whether contract exists). In deciding whether there was an agreement to arbitrate, the Court must make its own independent determination without deference to the panel's findings. *See First Options*, 115 S.Ct. at 1924.

11.     In fact, in the arbitration proceeding, Tricon conceded that the arbitrability issue would be subject to judicial review. Tricon argued that the Panel should ignore Vinmar's objections to jurisdiction because "the fact that Vinmar can seek a motion to vacate *after* arbitral proceedings conclude has no bearing on this Panel's jurisdiction to proceed." (*See* Tricon's Response to Vinmar's Supplemental Motion to Dismiss at p.5 (citing case law that it is a court that decides arbitrability as a threshold issue and specifically conceding that a Panel's arbitrabiltiy decision is subject to judicial review and noting that Vinmar could seek motion to vacate after arbitral proceedings) (emphasis in original) (Appendix Tab M); *see also* Tricon's Closing Statement and Post-Arbitration Brief at p. 8-9 (same, "[n]o one disputes that" the Panel's "arbitrability decision is 'subject to independent review by the courts'") (Appendix Tab N)).

## C.     Vinmar Did Not Waive Its Objection to Arbitration.

12.     Courts are clear that a party may participate in an arbitration proceeding without waiving its objection to the forum so long as the objection to arbitration was raised at the outset. *See, e.g., First Options*, 115 S. Ct. at 1925. In this case, Vinmar

objected to AAA's jurisdiction at every turn.  Vinmar first asserted its objection to arbitration in response to Tricon's initial demand for arbitration.  (Appendix Tab A). AAA acknowledged Vinmar's objection, but deferred to Tricon's decision to proceed in arbitration.  (*See* April 2, 2009 correspondence from AAA (Appendix Tab C)).   In response, Vinmar reasserted its objection because AAA's jurisdiction was an issue reserved solely for the courts.  (Appendix Tab B).  All of the pleadings and actions taken by Vinmar in the arbitration were made expressly subject to Vinmar's ongoing objection to the forum.[6]   Vinmar filed a motion to dismiss specifically objecting to AAA's jurisdiction, further asserted its motion prior to the initiation of the final hearing in arbitration, again challenged the Panel's jurisdiction in a post hearing brief, and argued the AAA's lack of jurisdiction in its closing arguments.[7]  The Panel acknowledged that Vinmar properly announced its objection to jurisdiction and had not waived it or

---

[6]     *See, e.g.*, April 24, 2009 AAA conference call minutes ("Respondent re-iterated objection as to arbitrability of matter") (Appendix Tab D); October 20, 2009 correspondence to AAA (continuing objection to jurisdiction in letter regarding scheduling matters) (Appendix Tab E); Vinmar's Objections and Responses to Tricon's First Requests for Production (included as an example of all of Vinmar's discovery responses, which continued its objections and specifically objected to each request based on the lack of AAA jurisdiction) (Appendix Tab F); Vinmar's First Requests for Production propounded on Tricon (included as an example of all Vinmar's discovery requests, which continued its objection to AAA jurisdiction) (Appendix Tab G); Vinmar's Motion to Compel (maintaining objection in introduction) (Appendix Tab H); *and* Hearing Transcript at Sept. 20—16:21 – 17:10 (stating objection to arbitration at outset of hearing and Panel acknowledging that the objection would run throughout hearing without necessity to restate) (Appendix Tab I).  These documents are included as mere examples of Vinmar's consistent objection throughout the arbitration proceeding to AAA jurisdiction based on the absence of any agreement to arbitrate.

[7]     *See* Respondent's Supplemental Motion to Dismiss for Lack of Jurisdiction and, Subject Thereto, Its Answer and Defenses to Claimant's First Amended Specification of Claims (Appendix Tab K); Respondent's Brief in Support of its Supplemental Motion to Dismiss for Lack of Jurisdiction and, Subject Thereto, Its Prehearing Brief (Appendix Tab L); Appendix Tab I at Sept. 20—16:21 – 17:10; Vinmar's Post Hearing Brief (Appendix Tab J); *and* Appendix Tab I at Closing Arguments—39:2 – 44:6.

otherwise willingly engaged in the arbitration proceeding.[8]  Under these circumstances, Vinmar did not waive its challenge to the arbitration panel's jurisdiction.  *See First Options*, 115 S. Ct. at 1925.  This is also consistent with Texas state law.  *See Holcim (Texas) Ltd. Partnership*, 211 S.W.3d 796, 802-03 (holding that a party may dispute the existence of an arbitration agreement in a motion to vacate where it objected to the lack of jurisdiction in the arbitration proceeding).

### D.   There Is No Agreement to Arbitrate, Rendering the Award Unenforceable.

13.   Applying state law contract formation principles and making an independent determination of the facts as required by the law establishes that the award must be vacated because there is no agreement to arbitrate.

#### 1.   Tricon's Claim is Based on a Letter That Admittedly Does Not Contain An Arbitration Agreement.

14.   Tricon sued Vinmar in arbitration claiming breach of contract.   In its pleadings and all of its other submissions (including its submissions to this Court), Tricon alleged that the contract which formed the basis of its claim was a letter sent by a broker purporting to confirm an oral agreement.   Tricon alleged a binding contract existed at the moment the broker sent the confirmation letter to both parties.   (*See, e.g.,* Tricon's First Amend. Spec. of Claims at ¶¶ 21 & 57 (Appendix Tab O)).   It is uncontested that the broker's letter did not contain an agreement to arbitrate.   (*See* Broker's Letter (Appendix Tab P)).   It is equally uncontested that the parties never agreed to arbitrate during any of

---

[8]      *See, e.g.*, Appendix Tab I at Sept. 20—17:5-10 (Panel acknowledging that Vinmar has filed its objection and need not continue objecting throughout the hearing).

the discussions or negotiations with the broker. Without an agreement requiring arbitration, AAA and the panel never acquired jurisdiction over this dispute. *Millmaker*, 2008 WL 4560624 at *4. Since there was no agreement to arbitrate and no jurisdiction for AAA or the panel, the award is unenforceable and must be vacated under the New York Convention and the FAA.

2.     Tricon's Claim of Contract Modification Fails.

15.     Tricon concedes that the broker's letter did not have an agreement to arbitrate. As the sole basis to support the award and AAA's supposed jurisdiction, Tricon relies on a document it sent after the alleged agreement was formed. Tricon claims the parties agreed to modify the terms of the broker "contract" to include terms from its subsequently furnished sales contract, which included an arbitration provision. Tricon's claim of contract modification cannot sustain the award because the panel did not have jurisdiction to decide whether the alleged contract was modified. *See ODL Services, Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 415 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Instead, only this Court has the power to decide whether the parties agreed to arbitrate. For this reason alone, the award must be vacated.

16.     Moreover, the evidence conclusively establishes that the parties did not modify the alleged contract to include an arbitration provision or, at the very least, there are genuine issues of material fact concerning modification that must be determined by a jury. Under Texas law, whether a contract is modified depends on the parties' intentions and is a question of fact. *Stewart & Stevenson, LLC v. Galveston Party Boats, Inc.*, 2009 WL 3673823 at *9 (Tex. App.—Houston [1st Dist.] Nov. 5, 2009, no pet.). The burden

of proving modification rests on the party asserting modification, which in this case is Tricon. *Id.* Although the UCC does not require separate consideration for a modification, the other elements of a contract, namely a meeting of the minds, must be present to form a valid contract modification. *Id. See also Echo, Inc. v. Whitson Co*, 121 F.3d 1099, 1103 (7th Cir. 1997). Tricon cannot meet its burden to establish contract modification.

17. After the broker issued a letter purporting to confirm the alleged agreement, Tricon sent a proposed sales contract to Vinmar. (*See* Proposed Sales Contract (Appendix Tab Q)). Tricon's proposed sales contract purported to change some of the terms from the broker's letter. (*Compare* Appendix Tab P *with* Appendix Tab Q). It also included a provision purporting to cancel the broker's letter:

> Broker – This cancels and supercedes any broker correspondence in relation to this transaction which shall be for the sole purpose of documenting commission, if any.

(Appendix Tab Q at TRI 000009). The proposed sales contract also contained signature blanks for Vinmar and Tricon. (*Id.* at TRI 000010). Neither Vinmar nor Tricon ever signed the contract. (Appendix Tab I at Sept. 20—137:3-20).

18. On July 29, 2008, Vinmar's logistics specialist, Laurentiu Pascu ("Pascu"), forwarded some handwritten "comments" on the sales contract to his logistics counter-party at Tricon. (*See* July 29, 2008 e-mail (Appendix Tab R)). Pascu had no authority to negotiate or change the commercial terms of any agreement. (Appendix Tab I at Sept. 21—543:18-24). Pascu did not sign the contract and did not "comment" on all of the provisions in the sales contract. (Appendix Tab R). He also did not say Vinmar accepted

the contract or any of the terms. (*Id.*). Instead, he noted his disagreement with several logistics provisions and also advised that Vinmar's purchase order would follow. (*Id.* at VIN000003) ("We shall revert soon with our Purchase Order for your review"). The purchase order was never finalized, approved, or sent to Tricon because Vinmar discovered the disagreement over product origin. (Appendix Tab I at Sept. 21—553:1-21).

19.    In response to Pascu's comments and his inquiries concerning shipping details, Tricon purported to agree with some, but not all, of Pascu's initial comments. (*See* Tricon E-mail (Appendix Tab S)). Tricon flatly refused to agree to Pascu's alteration to the demurrage time bar provision, and the witnesses admitted that the sales contract was never signed. (*Id.*).

20.    This continued negotiation of terms shows that, as a matter of law, Pascu's e-mail did not constitute a modification to the broker letter. To modify a contract, there must be, as with contract creation, an offer followed by an acceptance in accordance with the offer's terms. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 73-74 (Tex. App.—Houston [14th Dist.] 2010, pet. filed).

21.    Pascu's e-mail and his handwritten notations did not amount to an objective manifestation of acceptance to the proposed modification. Pascu's email plainly states that he was responding with "comments" to the proposed sales contract and would follow-up by sending Vinmar's own purchase order "for [Tricon's] review." (Appendix Tab R). Pascu's e-mail did not use the vocabulary of acceptance, nor does it purport to commit Vinmar to the proposed modification. To the contrary, Pascu merely comments

on the document and asks specific clarifying questions. (*Id.*). His specific reference to Vinmar's purchase order further demonstrates that Pascu was not accepting Tricon's proposed modification. After all, if Pascu intended to accept Tricon's proposed modification, there would be no reason to further respond with Vinmar's own purchase order.

22. Further, the proposed modification contained signature blanks for both parties to sign, yet neither party signed the proposed contract. (Appendix Tab R at VIN000008). When a contract contemplates signatures, either party has the right to insist upon the condition. *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955). "Under standard contract principles, the presence or absence of signatures on a written contract is relevant to determining whether the contract is binding on the parties." *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, pet. denied). Tricon's proposed sales contract makes it clear signatures were required before the modifications would become binding. Tricon's proposed modifications document contains specially prepared signature spaces for both Vinmar and Tricon. (Appendix Tab R at VIN000008). Vinmar's signature block includes the statement "Accepted Date:_____" and Vinmar is instructed to "advise [its] agreement by signing the foregoing and return via fax . . . ." (*Id.*). The introductory clause in the proposed contract recites that the contract "sets forth the entire agreement of the parties." (*Id.* at VIN000005). The express terms of the proposed sales contract, coupled with the fact that neither party signed the document, establishes that Pascu's e-mail was not sufficient, on its own, to establish a valid modification of the alleged contract.

23.     In *Scaife v. Associated Air Center, Inc.*, 100 F.3d 406 (5th Cir. 1996), the Court found there was no contract because the parties never signed the purported agreement. "If an agreement has been reduced to writing . . . an assent to the writing must be manifested.    Manifestation of assent 'commonly consists of signing and delivery.'" *Id.* at 410-11 (citations omitted).  In rejecting the claim that a writing simply was a confirmation of a prior oral agreement, the Texas First Court of Appeals relied heavily on the fact that the purported confirmation required signatures, which were lacking:

> Despite the use of the word "confirmation" in the body of the writing, we conclude here, as a matter of law, that there is unambiguous language in the writing that precludes a construction that it was a confirmation of a prior oral contract. The writing specifically states that *if* the stated "arrangements" were "in accord" with Adams' understanding, that Adams was to *sign* and to *return* one copy of the letter to Petrade.    There followed, in capital letters, the word "ACCEPTED" and a blank signature line for compliance with these instructions.

*Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 706 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *see also Koons v. Impact Sales & Marketing Group, Inc.*, 2007 WL 4292423 at *3 (Tex. App.—Fort Worth Dec. 6, 2007, no pet.) (recognizing blank signature block required further action to commence transaction).  For similar reasons, Tricon is unable to establish that the terms of its proposed modifications ever formed part of the alleged bargain.  Without the modifications, Tricon concedes there is no agreement to arbitrate.  Therefore, the award must be vacated.

24.     At the very least, Pascu's e-mail, Tricon's response and the lack of signatures on the proposed sales contract give rise to genuine issues of material fact concerning contract modification.   Vinmar is entitled to a jury trial to resolve these contested facts and Tricon has the burden of proof to establish contract modification before the award can be enforced.

### V.     CONCLUSION

25.     Because there is no agreement to arbitrate, this Court must vacate the award entered by a panel of arbitrators empanelled by AAA.   Alternatively, the Court should order discovery and set a jury trial on the contested issues of fact concerning contract modification.

WHEREFORE, Vinmar International, Ltd. respectfully requests that the Court vacate the award in its entirety, dismiss this matter, and award Vinmar such other and further relief to which it may be entitled.

Respectfully submitted,

By: /s/ Stephen H. Lee
Stephen H. Lee
State Bar No. 00791092
Southern Dist. Bar No. 18313
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone:  713-226-6686
Facsimile:  713-226-6286
E-Mail:  slee@porterhedges.com

**ATTORNEY-IN-CHARGE FOR
VINMAR INTERNATIONAL, LTD.**

**OF COUNSEL:**
**PORTER HEDGES LLP**
Daniel K. Hedges
State Bar No. 09369500
R. Blake Runions
State Bar No. 24060533
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: 713-226-6641
Facsimile: 713-226-6241

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served upon the following counsel of record by electronic filing on February 24, 2011:

George R. Diaz-Arrastia
Tracy D. Larson
Schirrmeister Diaz-Arrastia Brem, LLP
Pennzoil Place, North Tower
700 Milam St., 10th Floor
Houston, Texas 77002

/s/ Stephen H. Lee
Stephen H. Lee

2195178v2

16