# APPENDIX TAB G

Vinmar's First Requests for Production propounded on Tricon

AMERICAN ARBITRATION ASSOCIATION
HOUSTON, TEXAS

Tricon Energy, Ltd.,

    Claimant,

- against –

                         Case No. 70 198 Y 00168 09

Vinmar International, LTD,

    Respondent.

## VINMAR INTERNATIONAL, LTD.'S FIRST REQUESTS FOR PRODUCTION

Respondent Vinmar International, Ltd. ("Vinmar") objects to Claimant Tricon Energy, Ltd.'s ("Tricon") attempt to pursue its claim in arbitration. There is no enforceable arbitration provision between Vinmar and Tricon, and Vinmar never agreed to arbitrate this dispute. Subject to this ongoing objection, Vinmar must act to protect its right to be heard. Vinmar's involuntary participation in any aspect of this proceeding, including issuing its First Requests for Production, is subject to and without waiver of its objections to the American Arbitration Association's lack of jurisdiction. Vinmar's service of its First Requests for Production is not an admission that there is an arbitration agreement, not does it constitute a waiver of Vinmar's continued objection to this entire process because there is no arbitration agreement. Subject to this ongoing objection, Vinmar respectfully requests that Tricon respond to the following Requests for Production within twenty-one (21) days of service of these Requests.

1816749v1

## DEFINITIONS

Vinmar request that Tricon answer these Requests for Production ("Discovery Requests") according to the following definitions:

1. "You," "Your," or "Tricon," as well as a full or abbreviated name or a pronoun referring to Tricon, means Claimant Tricon Energy, Ltd., including its agents, representatives, and all other persons or entities acting on its behalf, in concert with it or under its control, whether directly or indirectly, including any attorney.

2. "Vinmar" means Respondent Vinmar International, Ltd. and its agents and representatives.

3. "MOAB Oil" means MOAB Oil, Inc. and its successors, predecessors, affiliates, officers, employees, agents or other persons acting on its behalf.

4. "Arbitration" means Case No. 70 198 Y 00168 09, *Tricon Energy, Ltd. v. Vinmar International, Ltd.*, before the American Arbitration Association ("AAA"). Vinmar offers this definition subject to its ongoing objection to Tricon's attempt to pursue its claim in arbitration. Vinmar continues to maintain that there is no enforceable arbitration provision between Vinmar and Tricon, and Vinmar never agreed to arbitrate this dispute. Subject to this ongoing objection, Vinmar must act to protect its right to be heard. Vinmar's involuntary participation in any aspect of this proceeding, including these Definitions, is subject to and without waiver of its objections to the AAA's lack of jurisdiction. Vinmar's use of the term "Arbitration" is not an admission that there is an arbitration agreement, not does it constitute a waiver of Vinmar's continued objection to this entire process because there is no arbitration agreement.

5. The "Dispute" means the subject matter of the Arbitration, namely Tricon's allegation that Vinmar contracted to buy a quantity of mixed xylene from Tricon in July 2008, Tricon's allegation that Vinmar breached a contract between the parties, and the disputed formation of a contract between the parties.

6. "Drafts" means drafts, versions, and copies of documents not identical to the final or executed versions, including, but not limited to, deletions, insertions, handwritten notes, comments, revisions, redlined versions, or other markups of final documents.

7. "Document(s)" or "documentation" means all written, typed, or printed matters, and all magnetic, electronic or other records or documentation of any kind or description (including, without limitation, letters, correspondence, telegrams, electronic mail, memoranda, notes, records, calendars, appointment books, minutes, contracts, agreements, notations or records of telephone or personal conversations or conferences, inter-office communications, electronic documents of any kind, microfilm, bulletins, circulars, pamphlets, photographs, video recordings, facsimiles, invoices, proof-of-payment, audio recordings, computer printouts and worksheets, spreadsheets), including Drafts and copies not identical to the originals (including deletions, insertions, handwritten notes, comments, or revisions), all photographs and graphic matters,

however produced and reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in DCDC's actual possession, custody or control, including those in the possession, custody or control of any an all present or former agents, employees, consultants, accountants, attorneys or other agents, whether or not prepared by DCDC, that constitute or contain matters relevant to the subject matter of this action.

8. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

9. "Person(s)" means and includes not only natural persons, but also all firms, partnerships, associations, trusts, joint ventures, corporations, proprietorships, governmental bodies, or any other organization, business, or legal entity and all predecessors or successors in interest.

10. "Relating to" and "relates to" mean, without limitation, embodying, referring, mentioning, or concerning, directly or indirectly, the subject matter identified in the request.

11. "Regarding" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting and constituting.

12. "Concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

13. "Communication" means and include any transmission, receipt, or exchange of information, whether orally or in writing, and including, without limitation, any conversation or discussion by means of letter, e-mail, note, memorandum, telephone, telegraph, telefax, telecopies, cable, or some other electronic or other medium.

14. The conjunctives "and" or "or" as used herein shall be construed both conjunctively and disjunctively and each shall include the other wherever such dual construction will serve to bring within the scope of these requests that which would otherwise not be brought in within their scope.

15. "Including," as used herein, is intended to mean "including, but not limited to."

16. The word "each" includes the word "every," and the word "every" includes the word "each." The word "any" includes the word "all," and the word "all" includes the word "any."

17. References to the singular shall include the plural, and references to the plural shall include the singular. The masculine form of a pronoun should be interpreted in the feminine as well.

18. All undefined terms shall be construed in accordance with their ordinary meaning as commonly used in the English language.

## INSTRUCTIONS

1. Answer each Discovery Request separately by stating whether documents will be produced as requested, providing the required documents, and by describing them as required below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number.

2. Each of the Discovery Requests should be construed independently and not by reference to any other request herein for purposes of limitation, except that identical documents need not be produced in response to more than one request.

3. Each document produced pursuant to these requests should be identified by a specific request to which it is responsive.

4. For each document or other requested information that you assert is privileged or not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; and the present location and the custodian for the document.

5. For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located, and describe in detail the reasons for the disappearance. Also, identify each person having knowledge of the disposition or loss of the document, identify any other document evidencing the lost document's existence or any facts about the lost document, and produce all documents which relate to the circumstances and/or reasons for the disappearance.

    a. When identifying the document (e.g. letter, email), state the following:

        i. the nature of the document;
        ii. the title or hearing that appears on the document;
        iii. the date of the document and the date of each addendum, supplement, and other addition, revision, or change; and
        iv. the identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    b. When identifying the person, state the following:

        i. the full name;
        ii. the present or last known residential address and residential telephone number;

      iii. the present or last known office address and office telephone number; and
      iv. the present occupation, job title, employer, and employer's address.

6. If any copy of any document whose production is sought is not identical to any other copy thereof, by reason of any alterations, different form (e.g., electronic form), marginal notes, comments or other material contained thereon, attached thereto, or otherwise, all such non-identical copies shall be produced separately. Such other copies include, without limitation, all revisions in electronic or magnetic format.

7. Electronic or magnetic data shall be produced in its native computer-readable format with an identification of the specific computer or computer devise from which it was taken and its associated software application and computer system, and on CD-ROMs readable by PC computers. The data produced must contain an exact image copy of the source hard drives, or other electronic or magnetic media or storage device containing the original data, including any and all metadata, and include not only active files, but all deleted, erased, or discarded copies, and prior versions or drafts of the data. Alternatively, documents should be produced in the TIFF format.

8. These requests are continuing in nature. If other information or documents come into Your possession or are brought to Your attention or to Your attorney in the course of trial or preparation for trial, supplementation of the requests is required.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION 1:

All documents related to information used, identified, referenced or otherwise incorporated into any of Tricon's answers to Vinmar's interrogatory requests.

### RESPONSE:


### REQUEST FOR PRODUCTION 2:

All documents related to the Dispute that is the basis of this Arbitration.

### RESPONSE:

**REQUEST FOR PRODUCTION 3:**

Produce all documents, records, and communications related to the claims made by You in this Arbitration, including, but not limited to, all documents, records, and communications that demonstrate and/or support the purported contract or agreement You assert was breached.

**RESPONSE:**

**REQUEST FOR PRODUCTION 4:**

A copy of all fully executed sales contracts between Tricon and Vinmar between July 2008 and the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION 5:**

A copy of all proposed sales contracts, including drafts, revisions, and marked up versions, between Tricon and Vinmar between July 2008 and the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION 6:**

Produce all documents, records, and communications related to the negotiation, agreement, and execution of a sales contract relate to the Dispute that forms the basis of this Arbitration, including, but not limited to all drafts, handwritten notes, revisions, correspondence (both internal and external), and all documents, records, and communications related to the negotiation or discussion of amendments or revisions to a sales agreement subsequent to execution, if any.

**RESPONSE:**


**REQUEST FOR PRODUCTION 7:**

All communications between Tricon and MOAB Oil (or any of its affiliates) that relates to the Dispute that is the basis of this Arbitration.

**RESPONSE:**


**REQUEST FOR PRODUCTION 8:**

All communications between Tricon and Ed Leyman that relates to the Dispute that is the basis of this Arbitration.

**RESPONSE:**


**REQUEST FOR PRODUCTION 9:**

All communications between Tricon and Vinmar that relates to the Dispute that is the basis of this Arbitration.

**RESPONSE:**


**REQUEST FOR PRODUCTION 10:**

All communications between Tricon and Rick Wilson that relates to the Dispute that is the basis of this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 11:**

All communications between Tricon and any person that relates to the Dispute that is the basis of this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 12:**

All documents reflecting Vinmar's intention to purchase mixed xylene originating exlusively from the United States.

**RESPONSE:**

**REQUEST FOR PRODUCTION 13:**

Produce all documents, records, and communications evidencing Your claim for attorneys' fees, including, but not limited to, an Engagement Letter, fee agreements, fee schedules, and invoices. This Request does not seek information protected by the attorney-client privilege.

**RESPONSE:**

**REQUEST FOR PRODUCTION 14:**

The complete file of each expert retained by Vinmar in connection with this dispute, including but not limited to all documents and communications reviewed, prepared, created and/or generated by each expert, including drafts, as well as all communications between Vinmar and each expert.

**RESPONSE:**

**REQUEST FOR PRODUCTION 15:**

Produce all documents that relate to or evidence any and all damages, costs, or expenses that You contend You are entitled to recover in this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 16:**

Produce all documents related to Tricon's inventory of domestic origin or sourced mixed xylene from June 2008 through October 2008.

**RESPONSE:**

**REQUEST FOR PRODUCTION 17:**

Produce all documents related to Tricon's total inventory mixed xylene from June 2008 through October 2008.

**RESPONSE:**

**REQUEST FOR PRODUCTION 18:**

Produce all documents related to the market price of mixed xylene from June 2008 through October 2008.

**RESPONSE:**

**REQUEST FOR PRODUCTION 19:**

Produce all documents related to the origin or sourcing of mixed xylene that Tricon was offering for sale during July 2008.

**RESPONSE:**

**REQUEST FOR PRODUCTION 20:**

Produce all documents related Tricon's efforts to sell the mixed xylene product that was the basis of the purported contract(s) at Dispute in this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 21:**

Produce all documents and communications related to the sale and/or cover of the mixed xylene product that was the basis of the purported contract(s) at Dispute in this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 22:**

Produce all documents and communications related to the sale price of the sale and/or cover of the mixed xylene product that was the basis of the purported contract(s) at Dispute in this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 23:**

Produce all contracts, including drafts, related to the sale and/or cover of the mixed xylene product that was the basis of the purported contract(s) at Dispute in this Arbitration.

**RESPONSE:**

**REQUEST FOR PRODUCTION 24:**

Produce all documents and communications related to Tricon's purchase of mixed xylene from June 2008 through October 2008.

**RESPONSE:**

**REQUEST FOR PRODUCTION 25:**

If you Denied Request for Admission No. 1, produce all documents and communications that supports your denial.

**RESPONSE:**

**REQUEST FOR PRODUCTION 26:**

If you Denied Request for Admission No. 2, produce all documents and communications that supports your denial.

**RESPONSE:**

**REQUEST FOR PRODUCTION 27:**

If you Denied Request for Admission No. 3, produce all documents and communications that supports your denial.

**RESPONSE:**

**REQUEST FOR PRODUCTION 28:**

If you Denied Request for Admission No. 4, produce all documents and communications that supports your denial.

**RESPONSE:**

**REQUEST FOR PRODUCTION 29:**

If you Denied Request for Admission No. 5, produce all documents and communications that supports your denial.

**RESPONSE:**

**REQUEST FOR PRODUCTION 30:**

If you Denied Request for Admission No. 6, produce all documents and communications that supports your denial.

**RESPONSE:**

                             Respectfully submitted,
                             PORTER & HEDGES, L.L.P.

By: _____
       Stephen H. Lee
       R. Blake Runions
       1000 Main Street, 36th Floor
       Houston, Texas 77002
       Telephone: (713) 226-6000
       Facsimile: (713) 228-1331

ATTORNEYS FOR RESPONDENT
VINMAR INTERNATIONAL, LTD.

February 1, 2010