# APPENDIX TAB H

Vinmar's Motion to Compel

AMERICAN ARBITRATION ASSOCIATION
HOUSTON, TEXAS

Tricon Energy, Ltd.,

    Claimant,

 - against –

Vinmar International, LTD,

    Respondent.

Case No. 70 198 Y 00168 09

## RESPONDENT'S MOTION TO COMPEL

**TO THE HONORABLE PANEL:**

Subject to and without waiver of its objection to arbitration, Vinmar International, Ltd. ("Vinmar") files this Motion to Compel seeking the production of Tricon Energy, Ltd.'s ("Tricon") product inventory records and related documents for the relevant time period. Vinmar also seeks the Panel's permission to re-depose Tricon's principal witness, Brad Lockwood, about the contents of the inventory records.[1]

### SUMMARY

Tricon has sued Vinmar alleging breach of contract. Tricon claims Vinmar agreed to purchase 5,000 metric tons of mixed xylenes ("MX"), a petrochemical. Beginning on July 22, 2008, a proposed contract was discussed through a broker and later through direct communications between the parties. However, a contract was never formed because, among other reasons, Tricon refused to guaranty the delivery of US origin MX. Despite the fact that a

---

[1] Vinmar maintains its objection to arbitration and AAA's jurisdiction. There is no enforceable arbitration provision and Vinmar never agreed to arbitrate this dispute. However, Vinmar has been forced to defend itself in this action or risk the entry of a default judgment. Vinmar's involuntary participation in any aspect of this proceeding, including filing this Motion to Compel, is subject to and without waiver of its objections to AAA's lack of jurisdiction.

1923790v1

contract was never formed, Tricon sued Vinmar in arbitration and seeks damages in excess of $1.5 million.

Through this motion, Vinmar seeks the production of Tricon's MX inventory records, or position sheets, during the relevant time period (July 1, 2008 through October 15, 2008), as well as the correspondence between the trader and Tricon's management related to the position sheets. These records will reveal Tricon's day to day inventory of MX and are relevant for at least four reasons:

(1) the position sheets and related correspondence may show how Tricon internally recorded the alleged transaction with Vinmar (relevant to whether there was a deal and, if so, the terms as understood by Tricon);

(2) the position sheets and related correspondence may reveal whether Tricon was able to supply US origin MX to Vinmar (relevant to whether Tricon acted in a commercially reasonable manner when Vinmar objected to the proposed sale);

(3) the position sheets and related correspondence may show whether and to what extent the alleged deal with Vinmar was expected to be profitable (relevant to Tricon's damages); and

(4) the position sheets and related correspondence may identify Tricon's daily position (long or short) in MX (relevant to the extent of Tricon's alleged damages and whether Tricon acted in a commercial reasonable manner in claiming re-sale).

For any one of these reasons, Tricon should be ordered to produce its position sheets. In addition, Vinmar should be entitled to re-depose Brad Lockwood, the principal trader and person who maintained the inventory records, to discuss the position sheets.

### STANDARD

The purpose of discovery is to seek the truth, so disputes may be decided by what the facts reveal, not by what facts are concealed. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 555 (Tex. 1990). Discovery may be obtained about any matter relevant to the subject matter of the case. TEX. R. CIV. P. 192.3(a). Information is discoverable as long as it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Like the Texas Rules of Civil

1923790v1      2

Procedure, the Federal Rules allow discovery of any nonprivileged matter that is relevant to any party's claim or defense. FED. R. CIV. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Similarly, Rule R-31 of the AAA's Rules for Commercial Arbitration allows for the introduction of evidence that is relevant and material to the dispute and the Panel is allowed discretion to order the production of information necessary to an understanding and determination of the dispute.

## ARGUMENT

In several requests for production, Vinmar sought the production of documents reflecting Tricon's inventory of MX during the relevant time period:

> **Request for Production No. 16:** Produce all documents related to Tricon's inventory of domestic origin or sourced mixed xylene from June 2008 through October 2008.
>
> **Request for Production No. 17:** Produce all documents related to Tricon's total inventory of mixed xylene from June 2008 through October 2008.[2]

(*See* Ex. A at ppg. 7-8). Tricon objected to both requests on the basis that the information was confidential and not relevant. (*Id.*). Tricon's position sheets and related correspondence are relevant and should be produced.

Brad Lockwood was the trader at Tricon who was negotiating the deal to sell MX to Vinmar. Mr. Lockwood testified that he maintains a position sheet which reveals Tricon's daily inventory of MX (and the other aromatic products he trades). (See Ex. B at 14-16, containing excerpts from Mr. Lockwood's Deposition). At a minimum, the position sheets reveal the date, quantity purchased or sold, the counterparty, the price and the market price of MX. (*Id.*). Mr.

---

[2] Although the request originally asked for documents from June 2008 through October 2008, Vinmar is willing to limit the responsive period to July 1, 2008 through October 15, 2008.

1923790v1   3

Lockwood further testified that he regularly updated the position sheets to track the day to day profitability of a trade or a series of trades. (*Id.* at 14). Mr. Lockwood also testified that he routinely transmitted his position sheets to others within Tricon's management team. (*Id.* at 17). Presumably, the alleged deal with Vinmar was recorded on Mr. Lockwood's position sheets or in his e-mails and other correspondence with management. During his deposition, Mr. Lockwood was asked a number of questions about Tricon's inventory of available MX during the relevant time period. Mr. Lockwood was unable to answer any of the questions and repeatedly referenced his position sheets. (*See, e.g.,* Ex. B at 37, 84, 89, 97, 109).

<u>Vinmar is entitled to discover the position sheets and internal correspondence because they may reveal how Tricon recorded its alleged deal with Vinmar.</u> Although there were discussions about the purchase of MX, Vinmar was in the market to purchase US origin MX and the broker who arranged the proposed deal admitted that the origin of the product was discussed during the negotiations. When Vinmar learned that Tricon had no intention of guaranteeing US origin MX, Vinmar terminated the contract negotiations. Any entries Mr. Lockwood made in his position sheets or internal correspondence related to this alleged deal are relevant to a number of issues in this dispute. For example, the absence of any entries in his position sheet would tend to indicate that Mr. Lockwood knew the alleged deal was not yet final, as Vinmar claims. If he did record entries related to this alleged contract, what he said internally about the deal also could be relevant to whether there was in fact a final, concluded deal between the parties and whether the "deal" obligated Tricon to provide US origin MX. Tricon's arbitrary refusal to produce these documents should be overruled.

<u>The position sheets and internal correspondence may reveal whether Tricon had US origin MX in inventory at the time of the alleged sale to Vinmar.</u> A central theme of Vinmar's

defense in this case is that the parties never reached a binding agreement because Vinmar was negotiating to purchase US origin MX while Tricon maintains it never guaranteed US origin MX. Whether Tricon had US origin MX in inventory at the time the parties initiated negotiations or at the time the negotiations were terminated may reinforce Vinmar's claim that all of the negotiations and discussions were centered around the purchase of US origin MX. Further, whether Tricon had US origin MX in inventory when the negotiations were terminated may cause the Panel to view Tricon's refusal to guarantee US origin MX as a breach of the agreement or certainly not in keeping with the spirit of the negotiations. Under either scenario, Tricon's position sheets are relevant.

<u>Tricon's position sheets and internal correspondence may reveal the daily market price for MX, as determined by Tricon.</u> Mr. Lockwood testified that his position sheets track the purchase or sale price for each MX deal against what Mr. Lockwood claims is the market price for MX on any given day. The position sheets then will provide relevant, discoverable information about Tricon's views of the daily market price for MX. So to will the correspondence between Mr. Lockwood and Tricon management. To the extent those market prices differ from the price Tricon now claims is the appropriate benchmark for measuring damages, the position sheets are relevant.

<u>The position sheets and internal correspondence may identify Tricon's daily MX inventory for the relevant time period.</u> The negotiations for the purchase of MX initiated on July 22 and were terminated on July 31. Yet, Tricon claims damages of more than $1.5 million based on an alleged cover sale that was concluded more than two months later. Tricon's inventory of MX during the period from July 1, 2008 through October 2008 is relevant to calculating Tricon's alleged damages. Among other things, if Tricon did not have MX in inventory when the

negotiations between Vinmar and Tricon reached an impasse, Tricon was not damaged by Vinmar's refusal to purchase the material. Further, Tricon's inventory will help assess whether it acted in a commercially reasonable manner by trying to saddle Vinmar with an arbitrary "cover" sale, particularly when Tricon had to purchase MX from another supplier to complete the alleged cover sale. Either way, Tricon's position sheets are relevant and should be produced.

A confidentiality agreement is sufficient to address Tricon's confidentiality claim. Vinmar offered to allow the documents to be produced under an agreement that would limit the use of the documents to this proceeding alone. Since the documents relate to Tricon's inventory of one product during a limited window of time almost two years ago, any concerns Tricon has about the confidential or proprietary nature of the documents are outweighed by Vinmar's need for the documents in defending itself against Tricon's claims.

Tricon should be required to produce Brad Lockwood for another deposition. In addition to requiring Tricon to produce the MX position sheets, the Panel should allow Vinmar to re-depose Mr. Lockwood about the position sheets. During Mr. Lockwood's initial deposition, he was asked a number of questions about Tricon's inventory. Mr. Lockwood was unable to answer any of the questions. Instead, he repeatedly deferred to his position sheets. To allow for a complete understanding of what the position sheets reveal, Vinmar asks the Panel to order Tricon to make Mr. Lockwood available for deposition to answer questions about the position sheets.

WHEREFORE, Respondent respectfully requests that the Panel order Tricon to produce all of its position sheets for the period July 1, 2008 through October 15, 2008 within 10 days and to make Brad Lockwood available for deposition at least 30 days prior to the arbitration hearings.

Respectfully submitted,

PORTER & HEDGES, L.L.P.

By: _____
Stephen H. Lee
R. Blake Runions
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

ATTORNEYS FOR RESPONDENT
VINMAR INTERNATIONAL, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was sent to the following via, facsimile, electronic mail and/or certified mail, return receipt requested on this the 14th day of June, 2010:

George Diaz-Arrastia
Tracy D. Larson
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place - North Tower
700 Milam, 10th Floor
Houston, Texas 77002
Email: gdarrastia@sdablaw.com
Email: tlarson@sdablaw.com

_____
R. Blake Runions