# APPENDIX TAB L

Respondent's Brief in Support of its Supplemental Motion
to Dismiss for Lack of Jurisdiction and, Subject Thereto,
Its Prehearing Brief

## AMERICAN ARBITRATION ASSOCIATION
## HOUSTON, TEXAS

| | | |
|---|---|---|
| Tricon Energy, Ltd., | : | |
| | : | |
| Claimant, | : | |
| | : | |
| - against – | : | Case No. 70 198 Y 00168 09 |
| | : | |
| Vinmar International, Ltd., | : | |
| | : | |
| Respondent. | : | |

## RESPONDENT'S BRIEF IN SUPPORT OF ITS
## SUPPLEMENTAL MOTION TO DISMISS FOR LACK OF JURISDICTION
## AND, SUBJECT THERETO, ITS PREHEARING BRIEF

**TO THE HONORABLE PANEL:**

Vinmar International, Ltd. ("Vinmar") serves its Brief in Support of its Supplemental Motion to Dismiss for Lack of Jurisdiction and, subject to and without waiver of its objection and request for dismissal, Vinmar also addresses certain legal issues that may arise at the hearing should the Panel decide to proceed even though it lacks jurisdiction.[1]

### I.
### AAA DOES NOT HAVE JURISDICTION

The American Arbitration Association and this Panel (collectively "AAA") do not have jurisdiction over this dispute and have no power to render an enforceable award because whether Tricon's claim is subject to arbitration is an issue only the courts have jurisdiction to decide. Tricon's decision to resort to arbitration over Vinmar's objection

---

[1] Vinmar's brief is not intended to address all the legal issues that may arise at the hearing and Vinmar reserves the right to provide further briefing prior to, during or after the hearing on the merits.

without first obtaining a court order compelling arbitration leaves AAA without jurisdiction to hear this dispute. The Panel must dismiss Tricon's claim.

Vinmar first asserted its objection to arbitration in response to Tricon's initial demand for arbitration. (Ex. A, 3/18/09 Ltr. to AAA objecting to arbitration). AAA acknowledged Vinmar's objection, but deferred to Tricon's decision to proceed in arbitration. (Ex. B, 4/2/09 Ltr. from AAA). In response, Vinmar reasserted its objection because AAA's jurisdiction was an issue reserved solely for the courts. (Ex. C, 4/8/09 Ltr. to AAA). In spite of Vinmar's objections, AAA has ceded to Tricon's election to pursue its claims in this forum. At every stage of this proceeding, Vinmar has urged its objection to AAA's jurisdiction because there is no agreement to arbitrate and Vinmar has not consented or in any way agreed to submit this dispute to arbitration. Vinmar's involuntary participation in this proceeding is necessary to protect its interests because AAA has refused to recognize the limitations to its jurisdiction.

## A.      The Panel And AAA Do Not Have Jurisdiction To Hear This Dispute.

It is well settled that a court, not arbitrators, must decide "gateway matters" such as whether a valid arbitration agreement exists. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005).[2] "[W]here the very existence of an agreement to arbitrate is at issue, it is for the courts to decide based on contract formation principles." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 212 (5th Cir. 2003). Here, Vinmar challenges the very existence of an agreement to arbitrate because the parties never reached a final, binding contract and, if they did, the alleged contract did not

---

[2]   Copies of the cases cited by Vinmar will be supplied to the Panel in a separate Appendix.

contain an agreement to arbitrate. Both of Vinmar's challenges go to the very question of whether there is an agreement to arbitrate. Since arbitration is a matter of contract, if a party claims it has not agreed to arbitrate, a court must determine whether there is an agreement to arbitrate before the matter can be submitted to arbitration. *Will-Drill*, 352 F.3d at 218.

The Fifth Circuit's decision in *Will-Drill* clearly establishes that AAA does not have jurisdiction over this dispute. In that case, Will-Drill attempted to compel arbitration based on an arbitration provision contained in a proposed sale agreement. Even though it signed the proposed sale agreement, Samson argued that the agreement required signatures of other parties before it was a legally binding contract. In resisting arbitration, Samson argued that the court must determine whether the agreement was enforceable because, absent an enforceable contract, "there is no agreement on anything, including an agreement to arbitrate." *Id.* at 215. The Fifth Circuit agreed with Samson and held "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Id.* at 219. The court's holding is dispositive in establishing that AAA does not have jurisdiction over this dispute.

Vinmar challenges the very existence of an agreement between it and Tricon. Vinmar denies that there was a valid, enforceable contract between the parties and, even if there was a contract, the contract did not include an agreement to arbitrate. Vinmar has repeatedly asserted its objection to arbitration and AAA's jurisdiction because Vinmar did not agree to arbitration. The Fifth Circuit squarely addressed this issue and found that

courts, not arbitrators, must make the determination of whether a valid agreement to arbitrate exists:

> We base our answer on the fundamental principle that arbitration is a matter of contract which cannot be forced upon a party absent its consent. Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract.
>
>         *         *         *         *
>
> In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue.

*Id.* at 218. Under these circumstances, AAA simply does not have jurisdiction over this dispute. The Panel must dismiss Tricon's claim.

## B.   An Agreement To Arbitrate Does Not Exist[3]

Tricon's argument in support of jurisdiction in this forum confirms that AAA has no authority to hear this dispute. Tricon's claim rests upon a letter sent by a purported broker, MOAB Oil, purporting to confirm an oral agreement between the parties. Tricon alleges a binding contract existed at the moment MOAB sent the confirmation letter ("MOAB Letter") to both parties. (*See, e.g.,* Tricon's 1st Amend. Spec. of Claims at ¶¶ 21 & 57). Tricon concedes that the MOAB Letter itself does not contain an agreement to arbitrate.

---

[3] The Panel does not have jurisdiction to determine whether an agreement to arbitrate exists. Vinmar offers its analysis to demonstrate the existence of a real impediment to jurisdiction which undermines this entire proceeding. Indeed, Tricon's own pleadings highlight the absence of jurisdiction.

In an effort to create jurisdiction, Tricon relies on an arbitration provision contained in a proposed sales contract Tricon sent to Vinmar after the MOAB Letter was sent and after Tricon alleges an enforceable contract was formed. In trying to bootstrap this arbitration provision into the parties' alleged agreement, Tricon resorts to Article 2.207 of the Texas Business and Commerce Code (the "UCC") to argue that the terms of its proposed sales contract were part of the alleged agreement. However, Tricon's position is contrary to Texas law, which holds that terms contained in documents transmitted after the formation of a contract do not become part of the contract under Article 2.207 or otherwise. *See Tubelite v. Risica & Sons, Inc.*, 819 S.W.2d 801, 804 (Tex. 1991); *see also Enpro Systems, Ltd. v. Namasco Corp.*, 382 F. Supp.2d 874, 882-83 (S.D. Tex. 2005) (recognizing Article 2.207 does not apply to documents exchanged after a contract is formed). As a result, if Tricon is correct and the MOAB Letter is an enforceable contract,[4] there is no agreement to arbitrate and AAA has no jurisdiction.

In any event, whether the alleged contract in this case includes an agreement to arbitrate is a matter reserved exclusively for the courts, not this Panel. In determining that the court, not an arbitration panel, retained the power to decide whether the parties agreed to arbitration, the First Court of Appeals confronted a similar set of circumstances. *See ODL Services, Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 415 (Tex. App.— Houston [1st Dist.] 2008, no pet.). In that case, ODL argued that an arbitration provision in a master agreement between the parties required arbitration of the dispute at issue.

---

[4]   For a number of reasons, Vinmar disputes Tricon's claim that the MOAB Letter constitutes an enforceable contract.

ODL further claimed that the question of arbitrability rested with the arbitrators, not the court. The court rejected ODL's arguments because ODL's invocation of the arbitration clause in the master service agreement first required findings that the parties had a contract and that the master service agreement was triggered:

> ODL's position reverses the proper inquiry. ODL starts by invoking the Master Agreement's arbitration clause, then asks if the Master Agreement was incorporated into the parties' alleged oral contract. <u>Instead, the initial inquiry is whether the parties entered into any kind of agreement that could trigger the Master Agreement</u>; only if the answer to this inquiry is "yes" do we then consider what the Master Agreement's arbitration clause provides.

*Id.* at 414 (emphasis added).

Similarly, Tricon reverses the proper inquiry. Tricon first attempts to invoke an arbitration clause in its proposed sales contract, then argues the proposed sales contract (including the arbitration provision) was incorporated into the alleged contract that Tricon claims was created when MOAB sent a confirmation letter to Vinmar and Tricon. (*See, e.g.,* Tricon's 1st Amend. Spec. of Claims at ¶¶ 57 & 58). However, just as the *ODL* court held, the proper inquiry is whether the parties entered into a contract and, if so, whether the contract included the terms of Tricon's proposed sales contract. *ODL Services,* 264 S.W.3d at 414. This inquiry is solely for the courts to decide as a gateway matter before AAA or any other arbitration tribunal can exercise jurisdiction over Tricon's claim. *In re Weekley Homes, L.P.,* 180 S.W.3d at 130.

Because Texas law clearly reserves for the courts gateway matters, such as the very existence of an arbitration agreement, this Panel must dismiss this proceeding

because it is without jurisdiction to hear the dispute.  The sensible resolution is to dismiss the proceeding prior to commencing with a hearing on the merits because any award or ruling from this Panel on the merits of the dispute assures Vinmar of the right to vacate the award.[5]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(4) (requiring court to vacate an award if there was no agreement to arbitrate); *see also Burlington Resources Oil & Gas Co. v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 39-42 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Holcim (Texas) Ltd. Partnership v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 802-03 (Tex. App.—Waco 2006, no pet.).  Proceeding with a full hearing on the merits will result in additional, unnecessary expense and undoubtedly will lead to multiple trials or arbitration proceedings.  To avoid incurring even more needless expense, Vinmar requests that the Panel dismiss this proceeding prior to a hearing on the merits because AAA lacks jurisdiction.  Since Tricon pursued this arbitration in spite of Vinmar's repeated objections, AAA should require Tricon to pay all administrative and other expenses associated with this proceeding, including the fees of the arbitrators.

## II.
### A CONTRACT WAS NEVER FORMED

Subject to and without waiver of its objection to jurisdiction and its motion to dismiss on that basis, in the unlikely event the Panel refuses to dismiss this proceeding, Vinmar provides additional legal authority requiring the dismissal of Tricon's claim because there was no contract between the parties.

---

[5] Having elected this forum and sought affirmative relief before AAA, Tricon would not have the right to petition a court to vacate this Panel's award on the merits.

Tricon advances two theories in support of its sole claim for breach of contract. Tricon's primary argument is that the MOAB Letter constitutes the contract upon which its sues for damages. Alternatively, Tricon claims an enforceable agreement was reached several days later following the exchange of communications. Both arguments fail entitling Vinmar to a complete dismissal.

## A.   Mutual Assent is Lacking

"The sine qua non of a valid contract is a meeting of the minds of the parties upon every essential term of the agreement." *Quaker Oats Co. v. Brinkley Dryer & Storage Co.*, 164 F. Supp. 761, 768 (E.D. Ark. 1958). In this case, the evidence reveals that Vinmar negotiated to purchase U.S. origin mixed xylenes, while Tricon negotiated to sell open origin mixed xylenes. Vinmar was not willing to purchase anything except U.S. origin mixed xylenes and Tricon was not willing to sell anything but open origin mixed xylenes. Absent a meeting of the minds on this essential term, there was no contract. *See, e.g., Parker Drilling Co. v. Romfor Supply Co.*, No. 14-08-00875-CV, 2010 WL 2265146, at *5 (Tex. App.—Houston [14th Dist.], June 8, 2010, no pet. h.) ("The minds of the parties must also meet with respect to the agreement's subject matter and essential terms"). Without a contract, Tricon's claim fails.

## B.   The MOAB Letter Cannot Support Tricon's Claim

As a matter of law, Tricon cannot base its claim for recovery in this proceeding on the MOAB Letter because the letter does not contain an agreement requiring the parties to arbitrate their disputes. Nevertheless, Tricon's Specification of Claims and its Prehearing Brief repeatedly espouse the position that the MOAB Letter is an enforceable

contract and Tricon rests its claim squarely on that basis.[6]  If true, this Panel cannot award any relief to Tricon because the Panel cannot enforce the terms of an alleged agreement that does not vest the Panel with jurisdiction.

      1.    Article 2.207 of the UCC does not apply

Undeterred, Tricon attempts to fix this fatal defect by claiming the terms of the proposed sales contract (the only document that contains an arbitration clause) it sent to Vinmar after the MOAB Letter was circulated were included in the alleged contract. Tricon bases its argument on Article 2.207 of the UCC.  However, Tricon's assertion fails because Article 2.207 does not allow a party to add additional terms to an already formed contract and because Tricon's proposed sales contract is not an acceptance or a confirmation, which are the only two writings covered by Article 2.207.

First, Tricon claims throughout its pleadings that the MOAB Letter is an enforceable contract.  Vinmar disagrees with Tricon's assertion.  Nevertheless, if Tricon is correct, it is well established that terms contained in documents transmitted after the formation of a contract do not become part of the contract under Article 2.207 or otherwise.  *See Migerobe, Inc. v. Certina USA, Inc.*, 924 F.2d 1330, 1335-36 (5th Cir. 1991).  In *Migerobe*, the Fifth Circuit found Article 2.207 inapplicable to a purchase order sent after formation of a contract because Article 2.207 "applies only to the formation of contracts." *Id.*; *see also Contractor's Source Inc. v. Hanes Companies, Inc.*, No. 09-cv-0069, 2009 WL 6443116, at *7-8 (S.D. Tex., Dec. 29, 2009) (holding Article

---

[6]  For a number of reasons, Vinmar denies Tricon's claim that the MOAB Letter constitutes a valid, enforceable contract.  To the contrary, the MOAB Letter is not enforceable.

2.207 does not apply to documents sent after a contract is formed). Tricon cannot, on the one hand, claim the MOAB Letter is an enforceable contract which entitles Tricon to relief while, on the other hand, it argues that additional terms sent after the MOAB Letter form part of the parties' alleged bargain. *See Axelson, Inc. v. McEvoy-Willis*, 7 F.3d 1230, 1233 (5th Cir. 1993) ("Because the parties had a meeting of the minds months before, the additional terms on the June purchase order never became part of the contract."),

Second, on its face, Article 2.207 only applies in two situations, neither of which is at issue here. The first is when an offer is made and a written acceptance is sent purporting to add additional terms to the offer. *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises*, 625 S.W.2d 295, 299 (Tex. 1981). Tricon does not claim, nor could it establish, that its proposed sales contract was an acceptance of an offer. The second situation to which Article 2.207 might apply is when an informal oral agreement is followed by a written confirmation that contains additional terms. *Id.* Texas courts agree that this second application of Article 2.207 is limited to situations when a writing is necessary to make enforceable a contract that otherwise is unenforceable because of the statute of frauds. *International Metal Sales, Inc. v. Global Steel Corp.*, No. 03-07-00172-CV, 2010 WL 1170218, at *8-9 (Tex. App.—Austin, March 24, 2010, no pet. h.); *see also Enpro Systems, Ltd.*, 382 F. Supp.2d at 882-83. Tricon does not argue that its proposed sales contract was a confirmation of an otherwise unenforceable agreement. To the contrary, Tricon claims the MOAB Letter was an enforceable agreement that satisfied the statute of frauds. Tricon's pleadings and its theory of recovery preclude the

application of Article 2.207 to incorporate the terms of its proposed sales contract into the MOAB Letter.[7]

As a result, Tricon's attempt to insert its terms and conditions into the MOAB Letter fail. Without these additional terms, Tricon cannot pursue a claim in arbitration for breach of the MOAB Letter because there is no agreement to arbitrate.

### 2.   The MOAB Letter was not binding

Even if Tricon could pursue a claim arising under the MOAB Letter, the evidence establishes that the MOAB Letter was not a binding, enforceable contract. Tricon's own actions conclusively establish that the MOAB Letter was not binding on either party and, absent a signed contract, there was no enforceable agreement. "The intent of the parties to be bound is an essential term of an enforceable contract." *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 157 (Tex. App.—San Antonio 2008, pet. denied). When the parties contemplate the execution of a formal, signed contract, they are free to agree to details of a proposed agreement without creating an enforceable contract. *See Foreca, S.A. v. GRD Development Co.*, 758 S.W.2d 744, 745 (Tex. 1988) (*quoting* extensively from Corbin on Contracts). In determining whether the parties intended not to be bound until the execution of a formal written contract, courts may consider a number of factors, including whether the contract is of a type usually put in writing, whether the agreement needs a formal writing for full expression and whether the amount involved is large or small. *Id.* at 746, n.2. The subsequent conduct of the parties also may be decisive in

---

[7] Article 2.207 does not apply for other reasons, including the fact that Tricon's proposed sales contract is not a "confirmation" because Tricon did not sign the document. *Koons v. Impact Sales & Marketing Group, Inc.*, No. 2-07-001-CV, 2007 WL 4292423, at *3 (Tex. App.—Fort Worth, Dec. 6, 2007, no pet.) (holding that writing containing blank signature lines did not suffice as a confirmation).

establishing whether a contract has been made. *See 20 Atlantic Avenue Corp. v. Allied Waste Industries, Inc.*, 482 F. Supp.2d 60, 74 (D. Mass. 2007).

Tricon's conduct establishes that it did not intend to be bound by the MOAB Letter. Within hours after receiving the letter and consistent with its standard practice, Tricon prepared and sent to Vinmar a proposed sales contract. Tricon's proposed sales contract purports to set forth the entire agreement of the parties. By its express terms, the proposed sales contract "cancels and supercedes" the MOAB Letter and reduces the MOAB Letter to nothing more than a commission statement. Additional communications between Tricon and Vinmar also reveal that a contract was never formed. However, if there was any remaining uncertainty about Tricon's intent, it was put to rest when Tricon sued in arbitration. Having rejected the MOAB Letter as a binding agreement, Tricon is precluded from now claiming the letter constituted a final, binding contract. *See 20 Atlantic Avenue Corp.*, 482 F. Supp.2d at 75 ("It was not until it became useful for the Plaintiffs to term the LOI an agreement that they made any attempt to do so."); *see also Aniero Concrete Co. v. New York City Constr. Auth.*, No. 94 Civ. 3506 (CSH), 2000 WL 863208, at *6 (S.D.N.Y. June 27, 2000) ("The condition precedent having failed, [the court] may not take a step backwards to determine whether the preliminary negotiations or oral agreement that led to the written contract constitutes a binding agreement.").

## C.   Tricon's Proposed Sales Contract Is Not Enforceable

As an alternative approach, Tricon claims its proposed sales contract provides support for its claim that the parties had an enforceable contract. Tricon is wrong for at least two reasons, the proposed agreement was never signed by either party and there was

no mutual agreement between the parties on the terms.  For either reason, Tricon's claim must be dismissed.

>        1.        The purported contract was never signed by either party.

When a contract contemplates signatures, either party has the right to insist upon the condition. *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955). "Under standard contract principles, the presence or absence of signatures on a written contract is relevant to determining whether the contract is binding on the parties." *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, pet. denied).  Tricon's proposed sales contract makes it clear signatures were required before the agreement was binding.  The contract contains specially prepared signature spaces for both Vinmar and Tricon.  Vinmar's signature block includes the statement "Accepted Date:_____" and Vinmar is instructed to "advise [its] agreement by signing the foregoing and return via fax . . . ."  The introductory clause in the proposed contract recites that the contract "sets forth the entire agreement of the parties."  The express terms of the proposed sales contract, coupled with the fact that neither party signed the document, establishes that there was no enforceable contract between the parties.

In *Scaife v. Associated Air Center, Inc.*, 100 F.3d 406 (5th Cir. 1996), the court found there was no contract because the parties never signed the purported agreement. "If an agreement has been reduced to writing . . . an assent to the writing must be manifested.  Manifestation of assent 'commonly consists of signing and delivery.'" *Id.* at 410-11 (citations omitted).   In rejecting the claim that a writing simply was a

confirmation of a prior oral agreement, the First Court of Appeals relied heavily on the fact that the purported confirmation required signatures, which were lacking:

> Despite the use of the word "confirmation" in the body of the writing, we conclude here, as a matter of law, that there is unambiguous language in the writing that precludes a construction that it was a confirmation of a prior oral contract. The writing specifically states that *if* the stated "arrangements" were "in accord" with Adams' understanding, that Adams was to *sign* and to *return* one copy of the letter to Petrade.   There followed, in capital letters, the word "ACCEPTED" and a blank signature line for compliance with these instructions.

*Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 706 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *see also Koons v. Impact Sales & Marketing Group, Inc.*, 2007 WL 4292423 at *3 (recognizing blank signature block required further action to commence transaction).   For similar reasons, Tricon's proposed sales contract is unenforceable because neither party ever signed the proposed contract.

It is well settled that either party has the right to withdraw from further negotiations or discussions at any time before a written agreement is signed. *Gasmark, Ltd. v. Kimball Energy Corp.*, 868 S.W.2d 925, 928 (Tex. App.—Fort Worth 1994, no writ).   Vinmar exercised its unfettered right to do just that when it withdrew from further negotiations before a contract was formed or an agreement was signed.   Tricon has no claim against Vinmar.

### 2.    Tricon cannot establish mutual agreement.

To create a contract, there must be an offer followed by an acceptance in accordance with the offer's terms. *Parker Drilling Co. v. Romfor Supply Co.*, 2010 WL

2265146 at *4. An acceptance that changes or qualifies an offer's terms constitutes a rejection and a counteroffer. *Id.* The UCC requires the basic common law requirements of offer, acceptance and consideration to form a binding contract. *See, e.g., Echo, Inc. v. Whitson Co*, 121 F.3d 1099, 1103 (7th Cir. 1997). Tricon's alternative position is that the proposed sales contract constituted an offer to sell mixed xylenes to Vinmar. Tricon's claim fails because Vinmar never accepted Tricon's offer.

Several days after Tricon sent its proposed sales contract, Vinmar's logistics representative sent "comments" to portions of the document. Vinmar's "comments," which consisted of handwritten notes to certain provisions, do not amount to "an objective manifestation of acceptance that could create a contract." *Echo, Inc.*, 121 F.3d at 1103. The comments did not include language of acceptance, nor was the document signed. Vinmar did not accept Tricon's sales contract. Further, Tricon did not accept all of Vinmar's "comments" and, in fact, specifically rejected Vinmar's demurrage comment. Under basic offer and acceptance principles, there was no contract.

In addition, even if the proposed sales contract could be construed as a contract, the statute of frauds bars its enforcement. The statute of frauds requires a writing sufficient to indicate that a contract has been made between the parties that is signed by the party against whom enforcement is sought. TEX. BUS. & COMM. CODE ANN. § 2.201(2). The proposed sales contract was not signed by Vinmar. Contrary to Tricon's claim, the "comments" sent by Vinmar's logistics representative do not qualify as a signature. *See Birenbaum v. Option Care, Inc.*, 971 S.W.2d 497, 502 (Tex. App.—Dallas 1997, pet. denied) (holding signature on fax transmittal memo did not amount to

signature on alleged contract).  For this additional reason, Tricon's breach of contract claim fails.

WHEREFORE, Respondent respectfully requests that the Panel grant the motion to dismiss for lack of jurisdiction or, alternatively, dismiss Tricon's claims, assess all costs against Tricon and grant Vinmar such other and further relief to which it may be entitled.

Respectfully submitted,

PORTER & HEDGES, L.L.P.

By: _____
Stephen H. Lee
R. Blake Runions
1000 Main Street, 36th Floor
Houston, Texas  77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

ATTORNEYS FOR RESPONDENT
VINMAR INTERNATIONAL, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was sent to the following via electronic mail and U.S. First Class Mail on this the 2nd day of August, 2010:

George Diaz-Arrastia
Tracy D. Larson
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place - North Tower
700 Milam, 10th Floor
Houston, Texas 77002
Email: gdarrastia@sdablaw.com
Email: tlarson@sdablaw.com

Stephen H. Lee

## DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.
*attorneys at law*

JPMorgan Chase Tower
Suite 4700
600 Travis Street
Houston, Texas 77002

Telephone
(713) 228-5100
Telecopier
(713) 228-6138

Stephen H. Lee, Partner

slee@drhrlaw.com

March 18, 2009

*Via* Facsimile – (972) 490-9008
Ms. Angela A. Malian-Mills
Case Manager, Dallas Office
American Arbitration Association
13455 Noel Road, Suite 1750
Dallas, Texas 75240

     Re:    Case No. 70 198 Y 00168 09
             *Tricon Energy, Ltd. v. Vinmar International Ltd.*

Dear Ms. Malian-Mills:

    I am counsel for Vinmar International Ltd. ("Vinmar") and write in response to the Demand for Arbitration filed by Tricon Energy, Ltd. ("Tricon"). Please be advised that Vinmar objects to Tricon's attempt to pursue its claim in arbitration. There is no enforceable arbitration provision and Vinmar never agreed to arbitrate this dispute. Without an agreement to arbitrate, the American Arbitration Association ("AAA") does not have jurisdiction to hear this dispute. Vinmar objects to this proceeding and to any further action by AAA or Tricon in this improper forum. Since it lacks jurisdiction to proceed, Vinmar requests that AAA dismiss this arbitration. Alternatively, Vinmar requests that AAA confirm in writing to all parties that it will not proceed with this matter until and unless a court of competent jurisdiction finds there is a valid, enforceable agreement to arbitrate.

                      Very truly yours,

                      Stephen H. Lee

SHL/mm

cc:    Mr. George R. Diaz-Arrastia, *via* facsimile
       Schirrmeister Diaz-Arrastia Brem LLP
       Pennzoil Place – North Tower
       700 Milam, 10th Floor
       Houston, Texas 77002



EXHIBIT

A

Ms. Angela A. Malian-Mills
March 18, 2009
Page 2

cc:     Ms. Kathleen A. Gossett-Cantrell
        Supervisor, Dallas Office
        American Arbitration Association
        13455 Noel Rd, Suite 1750
        Dallas, Texas 75240
        *Via* Facsimile:  (972) 490-9008



American Arbitration Association
*Dispute Resolution Services Worldwide*

*Central Case Management Center*

April 2, 2009

13455 Noel Road - Suite 1750, Dallas, TX 75240
telephone: 972-702-8222 facsimile: 972-490-9008
internet  http://www.adr.org/

**VIA EMAIL ONLY**

George R. Diaz-Arrastia, Esq.
Schirrmeister Diaz-Arrastia Brem LLP
Pennzoil Place - North Tower
700 Milam, 10th Floor
Houston, TX  77002

Stephen H. Lee, Esq.
Doyle, Restrepo, Harvin & Robbins, LLP
600 Travis, Suite 4700
Houston, TX  77002

Re: 70 198 Y 00168 09
    Tricon Energy, Ltd.
    and
    Vinmar International Ltd.
    - Houston, Texas
    Claim:  $1,600,000.00

Dear Parties:

This will acknowledge receipt of a letter dated March 26, 2009, from Claimant, a copy of which we note has been exchanged with the other party.

The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence.  The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules.  The parties may wish to raise this issue, upon appointment of the arbitrator.

The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration.  The AAA should not be named as a party-defendant.  The Rules state that the AAA is not a "necessary party".  The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome.

An administrative call will be scheduled on one of the following dates:

April 9, 14, 16, 2009

**EXHIBIT**

**B**

Please advise the Association of your availability by April 6, 2009.  Absent a response, we will assume all dates and times are acceptable and a call will be scheduled.

Sincerely,

*Angela A. Malian-Mills*

Angela A. Malian-Mills
Case Manager
800-426-8792
MalianA@adr.org

*Supervisor Information: Kathleen A. Gossett-Cantrell, 888 774-6929, Cantrellk@adr.org*

DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.
*attorneys at law*

JPMorgan Chase Tower
Suite 4700
600 Travis Street
Houston, Texas 77002
Stephen H. Lee, Partner

Telephone
(713) 228-5100
Telecopier
(713) 228-6138
slee@drhrlaw.com

April 8, 2009

*Via* E-mail – NewhallC@adr.org
Ms. Christine Newhall
Senior Vice President, Case Management
American Arbitration Association
One Center Plaza, Suite 300
Boston, MA 02108

     Re:    Case No. 70 198 Y 00168 09
            *Tricon Energy, Ltd.  v. Vinmar International Ltd.*

Dear Ms. Newhall:

     I am counsel for Vinmar International Ltd. ("Vinmar") and write to you in response to the attached letter I received from the Dallas Office of the American Arbitration Association ("AAA") with respect to the above-referenced matter.

     Vinmar has never agreed to submit its dispute with Tricon Energy, Ltd. ("Tricon") to arbitration with AAA or any other organization.  Despite Vinmar's objection to AAA's jurisdiction, AAA has determined that it will proceed to hear this matter even though there is no arbitration agreement.  AAA has no authority to hear a dispute unless the parties have agreed to submit the controversy to AAA.  In addition, under these circumstances, AAA does not have the power or authority to render a decision on whether the parties have agreed to arbitrate a dispute.  Instead, a Texas court must make this determination before AAA can proceed to hear the dispute.  *See, e.g., In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (finding that courts, not arbitrators, must decide "gateway matters" such as whether a valid arbitration agreement exists).  AAA simply does not have the authority to decide whether it has jurisdiction to hear this case.

     As the party seeking to invoke the arbitration process, Tricon has the burden to obtain an order from a court of competent jurisdiction compelling Vinmar to arbitrate this dispute.  AAA has no authority or power to proceed in the absence of such an order.  This is particularly true in this case where there was no agreement between the parties and where the alleged agreement Tricon claims supports arbitration does not vest an arbitrator with the authority to determine whether there is in fact an agreement to arbitrate.  In this instance, AAA's decision to allow Tricon to transfer the burden and expense of challenging AAA's right to hear this dispute to Vinmar is inconsistent with AAA's own policies and mission statement.  AAA has a responsibility to assert its right to entertain a dispute only when it is



**EXHIBIT**

_C_

Ms. Christine Newhall
April 8, 2009
Page 2

clear that the parties have agreed to submit their disputes to arbitration. Requiring Vinmar to incur the time and expense associated with obtaining a court order enjoining AAA from further proceedings until the question of arbitrability is determined by a court is not in keeping with AAA's charter.

In a final effort to avoid unnecessary expense, Vinmar requests that AAA stay this case until and unless Tricon obtains a final order from a court of competent jurisdiction finding that an enforceable arbitration agreement exists between the parties. In light of AAA's stated intent to proceed with an administrative conference on April 16, 2009, please inform me of AAA's position no later than the close of business on Monday, April 13, 2009. If AAA refuses to stay this proceeding as requested, Vinmar will be forced to pursue any and all available remedies, which may include obtaining an order enjoining AAA and Tricon from proceeding with this case.

Very truly yours,

Stephen H. Lee

SHL/mm
Attachment

cc:    George R. Diaz-Arrastia (*via* e-mail – gdarrastia@sdablaw.com)
       Angela A. Malian-Mills (*via* e-mail – MalianA@adr.org)
       Kathleen A. Gossett-Cantrell (*via* e-mail – CantrellK@adr.org)